GREEN v. CORRIGAN, *Appellant.*

1.  **Contract, Illegality of.**  The plaintiff who was the attorney of a water works company and was also a member of the local board, the latter having power to make contracts and fix the prices for the construction of the works, without the knowledge of the company entered into an agreement with defendant, the contractor for the construction of the works, whereby the plaintiff was to share with defendant in the profits of the contract.  *Held,* that plaintiff was *in delicto* and could not recover of defendant on such contract.

2.  ——.  An exception to the maxim, *in pari delicto potior est conditio defendentis et possidentis,* arises where the parties to the transaction, although concurring in the illegal act, are not to be regarded as equally guilty in consequence of fraud, oppression, imposition or hardship practiced by one party upon the other, thereby attaining an unconscionable advantage.

*Appeal from Jackson Special Law and Equity Court.—*
A. COMINGO, ESQ., Special Judge.

REVERSED.

The contract of partnership which is the basis of this suit is as follows :

"Articles of agreement made and entered into this tenth day of March A. D., 1874, between Thomas Corrigan, party of the first part, and Amos Green, party of the second part, witnesseth that said party of the second part having obtained for said party of the first part, a contract with the National Water Works Company, for all work in the construction of water works at the City of Kansas, in the state of Missouri. It is hereby agreed that in consideration of ·the advice and services so rendered and to be rendered by the party of the second part, he is to have one-half interest in all profits resulting from said contract and work ; also, to furnish half of all funds needed.

" Witnesseth our hands, the day and year above mentioned.

" [Signed.]    THOMAS CORRIGAN,
    "AMOS GREEN."

*Broadhead, Slayback & Haeussler* and *C. V. Scott* for appellant.

(1) If the consideration of a contract, either in whole or in part, be illegal it defeats the entire contract and it is wholly immaterial whether the contract discloses such illegality or it be established by evidence *aliunde,* the principle being the same in either event. *Sumner v. Sumner,* 54 Mo. 340. (2) Contracts in violation of public policy are as illegal, to all intents and purposes, as if they were expressly prohibited by statute. When a contract involves moral turpitude, is *malum in se,* courts of

equity will not interfere in behalf of a guilty party, even when the contract is an executed one and the purpose of the action is to compel the other party to disgorge gains made under such contract. *Miller v. Marble*, 21 Ill. 152 ; 23 Barb. 9 ; 1 McLean, 460. The utmost limit to which courts of equity will go is to interfere in behalf of the least guilty party against the chief mover in the unlawful enterprise, where the offence was *malum pro-hibitum* and not in its nature essentially or necessarily immoral or violative of public policy. *Kitchen v. Greenbaum*, 61 Mo. 110. (3) Where an attorney has been retained by one he cannot enforce a contract based on services or assistance to an opposite party. Weeks on Attys., sec. 120 ; *Garrard v. Waddington*, 16 Johns. 486 ; *Herrick v. Cotley*, 30 How. Pr. 208 ; *Peltz v. Long*, 40 Mo. 537 ; *McDonald v. Wagner*, 5 Mo. App. 56. (4) A court of equity will not lend its aid in the division of profits derived under a transaction illegal in its nature or contrary to public policy, although it has been fully executed and the profits are in the hands of one partner. *Sykes v. Beasdon*, 11 Ch. Div. 469 (1879) ; *Wilson v. Murray*, 23 N. J. Eq. 257 ; *Craft v. McConnoughy*, 79 Ill. 346 ; *Todd v. Lafferty*, 30 N. J. Eq. 254 ; *King v. Winants*, 71 N. C. 469 ; *Kitchen v. Greenbaum*, 61 Mo. 110 ; Pollack's Principles of Contracts, 244, notes 329 ; *Snell v. Dwight*, 120 Mass. 9 ; *Wilson v. Fletcher*, 7 Gratt. 1. (4) There can be no partnership in an illegal contract. Story on Part., sec. 6 ; 1 Story's Eq. Jur., secs. 222–240.

*Tichenor & Warner* also for appellant.

(1) The contract let to Corrigan was a fraud upon the company. The fraud was introduced into the same at the instance of plaintiff and solely for his benefit. (2) This action is not for a settlement of a partnership actually entered upon and in which plaintiff put his

money, but it is a suit upon an agreement to compel defendant to divide profits. Plaintiff is asking this court to reward him for violating his duty towards his principal, the company. (3) More than this, so sacred is this claim that this court is asked to compel Corrigan not to give up plaintiff's share, to-wit: the raised part of the profits, but to give plaintiff one-half of his half of the profits, the contract having been repudiated by his company for the very act on account of which he is seeking a reward. (4) The sole consideration of the agreement sued upon is a contract *malum in se*, and one repudiated for that reason. (5) Had not plaintiff's interest in the contract been discovered, had the contract not been repudiated, had the double profits been paid by the corporation, and been divided as intended, the corporation could have recovered back the one-half profits so received by plaintiff. If plaintiff can recover, then, under the circumstances just named, plaintiff would have been entitled to recover one-half of the profits received by Corrigan on account of his having been compelled by the company to disgorge. (6) It seems there were two profits contemplated by the contract with the corporation, one-half of them legitimate and deserved, and the other half illegitimate and fraudulent. Corrigan was to get his half for the risk he assumed upon the contract and for money invested and work done. Green was to "stand in" as to the other half in order to get his pay for other matters. (7) The contract to be carried out by the so-called partnership was a fraud on the company and on that account void. Story on Contracts, sec. 582; *Todd v. Rafferty*, 30 N. J. Eq. 259; *Farley v. Railroad*, 14 Fed. Rep. 114; *Sykes v. Beasdon*, 11 Law Rep. [Ch.] 195; *Snell v. Dwight*, 120 Mass. 9; *King v. Winants*, 71 N. C. 469; *Fletcher v. Watson*, 7 Gratt. 1; *Atlee v. Fink*, 75 Mo. 100; *Bierbauer v. Worth*, 5 Fed. Rep. 337; *Parkersburg v. Brown*, 106 U. S. 503.

*R. O. Boggess* for respondent.

(1) The appellant held no such relation to the
water works company or to any of the persons doing
business in its name as to entitle him to complain of
any dereliction of duty or want of fidelity on the part of
respondent in his relations to said company as its at-
torney or otherwise. *Buford v. Packet Co.*, 3 Mo. App.
159 ; *Chapman v. Callahan*, 66 Mo. 290 ; *McIndoe v.
City of St. Louis*, 10 Mo. 575 ; *Chambers v. City of
St. Louis*, 29 Mo. 543 ; *Henry County v. Allen*, 50 Mo.
231 ; *National Bank v. Matthews*, 98 U. S. 621 ;
*Thornton v. National Exchange Bank*, 71 Mo. 221, 228-9 ;
*Shewalter v. Pirner*, 55 Mo. 219 ; *Martindale v. Rail-
road*, 60 Mo. 508 ; *Gold Mining Co. v. National Bank*,
96 U. S. 640.    (2) The respondent and appellant made
the contract out of which this litigation has arisen un-
derstandingly and whether it was legal or illegal, moral
or immoral, in consonance with or contrary to public
policy, its objects and purposes having been consum-
mated.    In its consummation appellant has received and
now has in his possession a large sum of money which,
under the circumstances, belongs to respondent. *Kins-
man v. Parkhurst*, 18 How. 289 ; *McBlair v. Gibbs*, 17
How. 233 ; *Bartlett v. Holbrook*, 1 Gray. 114 ; *Wilder
v. Adams*, 2 W. & M. 329 ; *Armstrong v. Toler*, 11
Wheat. 258.

*Amos Green* and *H. M. Withers* also for re-
spondent.

(1) The contract on its face constitutes the parties
equal partners, under the law as laid down by text writers
and expounded by numerous decisions of the Supreme
Court of Missouri as well as those of other states.    Collyer
on Partnership, ch. 1 and sec. 1 ; Story on Partnership,

sec. 18, note 3 ; also secs. 20, 21, 22, 23 ; *Lengle v. Smith,* 48 Mo. 276 ; *Wear v. Johnson, Ib.* 234 ; *Whitehead v. Shikle,* 43 Mo. 537 ; *Brownley v. Elliot,* 38 New Hampshire, 287 ; *Freeman v. Bloomfield,* 43 Mo. 391 ; *Lucas el al. v. Cole et al.,* 57 Mo. 143 ; *Stevens v. Faucet,* 24 Ill. 483 ; *Berthold v. Goldsmith,* 24 Howard, 541.    (2) A silent partner stands in the same position as any other partner and his rights and liabilities are the same. *Harvey v. Varney,* 98 Mass. 118 ; Parsons on Part. 47, 57 ; Parsons on Mercantile Law, 167.    (3) If a contract contains different and advisable considerations or covenants, some of which are legal and others illegal, the court will reject the illegal and sustain the legal and uphold this contract.    2 Chitty on Contracts (11 Ed.) 1001, 1002 ; *Peltz et al. v. Eichele,* 62 Mo. 171 ; *United States v. Bradley,* 10 Peters, 393 ; *Presbury v. Fisher and Bennett,* 18 Mo. 50 ; *Koontz v. Hannibal Savings and Insurance Co.,* 42 Mo. 126 ; *Workman v. Campbell,* 46 Mo. 305.    (4) An attorney or agent is not under disability to contract in regard to matters in which the principal or client is interested while the relations exist and such contracts are not in law void ; but may be avoided by the client or principal where their rights are affected, or they may elect to hold the attorney or agent as a trustee, or when damage has accrued an action will lie at the instance of the client or principal.    But such contracts can only be avoided by the injured party and are good as to all others ; no third party can take any advantage of them, not even the assignee of a client ; the relation is purely personal, and if the party, client or principal take no step to avoid such contract no one else can.    Perry on Trusts, sec. 203, 206, 198 ; 2 Chitty on Contracts, 1037 (11 Ed.) ; Wharton's Treatise on Agents, p. 578, sec. 576 ; *Brown v. Mali,* 42 Md. 513 ; *McMahon v. Smith,* 6 Hesk. (Tenn.) 167.    When a client or principal permits an attorney or agent to accept and retain interest more or less conflicting with those of the client,

or the relation he sustains to the client, without objecting when it became known to them, they are estopped from disputing them. Wharton on Trusts, sec. 375; *Marsh v. Whitman*, 21 Wallace, 178. When an attorney purchases adverse to interest of client, assignee of client cannot set it up. *Cowen v. Bennett*, 18 Mo. 257; *Reid v. Mullins*, 48 Mo. 344; Bigelow on Frauds, 222; *Kitchen v. Railroad*, 69 Mo. 224; *Twinlick Oil Co. v. Marbury*, 1 Otto, 557. (5) A stranger or person not *in pari delicto* cannot take advantage of a fraud upon a third party. *Reid v. Mullins*, 48 Mo. 344; Chitty on Contracts (11 Ed.) 1037. (6) A contract is not void as against public policy, unless it affects the state or the public. 2 Chitty on Contracts (11 Ed.) 982.

HENRY, C. J.—This action was commenced in the Jackson county special law and equity court to compel a settlement of an alleged partnership between plaintiff and defendant in the construction of the Kansas City water works. The petition alleges that defendant entered into a contract with the National Water Works Company, of New York, for furnishing the materials and doing said work at certain stipulated prices, and subsequently by a written agreement between him and the plaintiff the latter became defendant's partner in the work. It then alleges the completion of the work. That the actual cost including materials was $109,020, but that at the contract prices it amounted to $214,-109.61. That defendant received payments as the work progressed and on a final settlement received $51,000 instead of $102,000 then due. That the settlement was made with Mastin, the financial agent of the company, between whom and defendant it was then fraudulently agreed for the purpose of cheating and defrauding plaintiff that Mastin should retain $51,000 which was to be concealed and was concealed from plaintiff for a long time after. That defendant on receipt of said $51,000

gave Mastin a receipt in full to enable Mastin to charge the full amount of $102,000 in his settlement with the water works company. That subsequently Mastin settled with that company and with this defendant on that basis, etc. Plaintiff claims one-half as his share of said $51,000 and also one-half of $50,000 alleged to have been previously received by the defendant with interest, which he charges were the net profits on the contract.

The defendant's answer contains a specific denial of all the material facts alleged in the petition. States that the net profits received by him did not exceed $20,000. That plaintiff, as attorney for the water works company, fixed the prices to be paid for the work. And that those prices were unreasonable. That he was forced to make the deduction of $51,000 from contract prices by reason of plaintiff's advice to the company; and for a further defence admitted the execution of the agreement relied upon by plaintiff as a partnership agreement, but alleges that it was illegal and void because Green was then the attorney of the water works company, and his duty to that company forbade his making such a contract. That it was his duty to advise that company whether the contract between Corrigan and that company was wise and prudent in its provisions and details, and that in making said contract plaintiff acted without the knowledge or consent of said company. The replication was a specific denial of all the allegations in the answer. On a hearing of the cause before a special judge there was a finding for plaintiff and a judgment in his favor for $30,285.71.

On the trial plaintiff introduced in evidence the written agreement between him and Corrigan. Also testimony tending to prove that he aided and assisted in the work; various payments made to Corrigan on account of the work. Denied in his own testimony that he was the attorney of the water works company. And generally testimony was introduced by plaintiff tending

to establish the facts alleged in the petition. In his own testimony he stated that the water works company, in fact, had no interest in the work, and never put anything into them, but permitted certain parties to build the works in its name. That those parties were himself, John J. and Thomas Mastin, of Kansas City, and Donnell, Lawson & Company, of New York. Plaintiff read in evidence the deposition of defendant in which he testified that he had an understanding with Mastin as soon as the water works ordinance was passed by Kansas City, that he, Corrigan, should have the work and that Green told the defendant that he wanted him to make $25,000, which was less than he usually made on such contracts. That Green told him that "the understanding was, he was to stand in with me, Donnell, Lawson & Company were to make their profits by commissions on the sale of first mortgage bonds, and the Mastins by loaning the money at two per cent. per month." "Green said this was the understanding among all the parties. Green said he thought he could control the fixing of prices."

Corrigan also testified that he supposed the profits, as he settled with Mastin, were from $36,000 to $37,000. Mr. Green did not, in his testimony, contradict the above statement made by Corrigan as to his representation to Corrigan. And in his written argument filed in this court he says : "The prices in the contract were fixed on consultation at what they were for *the express purpose and with the understanding among all partners* that in consequence of the risk taken, and a large margin to be carried for the company the contractor was to have liberal prices. And the great reduction in the prices of labor and material which took place during the spring and summer of 1874 left the margin of profit larger than it otherwise would have been. The company approved the prices with full knowledge, nothing about them being concealed or misrepresented," etc.

Mr. John J. Mastin contradicted Mr. Green; testi-

fied that he had nothing to do with fixing the prices for the work. That Green, the engineer and Corrigan fixed the prices. That when Corrigan came for a settlement he told Corrigan that the contract was fraudulent and he did not intend to pay it. That he did not know that Corrigan and Green were partners until long after they became partners. Mr. Mahan testified that "J. J. Mastin, Green and himself were by resolution constituted a local board at Kansas City with power to make all contracts for the construction of the water works. Col. Green was a little more liberal in his contracts than he should have been, and I objected to some of the prices in contracts let by him and they were sometimes modified and lowered. The letting of most of the contracts at Kansas City was left to him, as he was better acquainted with prices than I was. Having co-authority with him he made most of the contracts which were sometimes modified and afterwards approved by the local board. *Col. Green made the contract with Corrigan, as one of the executive committee ;* stated that he knew the prices of work in Kansas City better than I did as I was a stranger there, and that he would make the contract with Corrigan and submit it, which he did, with prices for the different characters of work, all made up. I objected to some of the prices and stated to him that they were entirely too high. After considerable discussion he stated that at those prices Corrigan would not make over $25,000 on the whole contract. I was satisfied that with a contract of that magnitude a man ought to make $25,000, and, therefore, consented to a ratification of the contract."

That the other parties, associated as partners with Mr. Green in the water works enterprise, were ignorant of the arrangement he had made with Corrigan is clearly established by the evidence. To this effect is the testimony of Mastin and Corrigan ; and Green, in a letter to Corrigan July 4, 1876, with respect to the contract

Corrigan had with the water works company to construct the works, used the following language : "There is a still more dangerous question going to the validity of the entire contract as against the company. That I will call your attention to when I see you." Again in the same letter : "The company are not at present aware of the facts, but may at any time discover them." What facts are these alluded to ? Evidently, the facts that Green had become a co-partner with Corrigan in the work, and in the interest of himself and Corrigan, was mainly instrumental in fixing the prices for the work. That the relations between him and Corrigan were studiously concealed from his co-partners the testimony leaves no doubt. That he controlled the prices Corrigan was to receive for the work is expressly testified to by Mahan. That those prices were enormously excessive is apparent from the claim he makes in his petition, and that it was a fraud upon his company does not admit of question. He testified that he was not the attorney of the National Water Works Company, except nominally ; and yet he claimed against that company for services as its attorney $5,000 to June, 1874, $5,000 additional for each of the years 1874, 1875, 1876, and $5,000 for extra or special services in 1877, aggregating $25,000, certainly a very liberal allowance to a mere nominal attorney. But the water works company was, in the construction of the Kansas City water works, but a nominal party, as Mr. Green testified. Nothing that it had, but the name, was used, and in making those charges and performing the professional services for which they were made, it is likely that they were in fact rendered to his co-partners who were his real, while the water works company was his nominal, client. The evidence in this case is very voluminous and it would fill a volume of our reports. I cannot, therefore, do much more than state conclusions fairly to be drawn from it.

The contract between Corrigan and Green was made in fraud of Green's co-partners (the Mastins and Donnell & Lawson) if made without their consent. *Spinks v. Davis*, 32 Miss. 152; *Valentine v. Stewart*, 15 Cal. 387. Green stood to them in the double relation of co-partner and counsellor and attorney. It is a rule of law recognized by this court that where parties to a contract are *in pari delicto*, one of them shall not avail himself of the fraud in the contract to prevent the other from re-covering his share of the profits, after the contract is executed, if the other "can make out his case otherwise than through the medium and by the aid of the illegal transaction to which he himself was a party." Broom's Legal Max. 645; *Kitchen v. Greenabaum*, 61 Mo. 116; *Hunter v. Whitehead*, 42 Mo. 524. But, "in cases where both parties are *in delicto*, concurring in an illegal act, it does not always follow they stand *in pari delicto*, for there may be and often are very different degrees in their guilt." Story's Eq., sec. 300. The maxim, "*in pari delicto potior est conditio defendentis et possidentis*," is not of universal prevalence. Another exception arises where the parties to the transaction, although concurring in the illegal act, are regarded as not equally guilty in consequence of fraud, oppression, imposition or hardship practiced by one party upon the other, thereby attaining an unconscionable advantage." *Kitchen v. Geenabaum, supra.*

In the case at bar, the parties are not *in pari delicto.* Green's conduct was not only a fraud upon his co-partners, but by false and fraudulent representations, that it was understood betwixt him and his co-partners that he might stand in with Corrigan, he induced the latter to admit him to share in the profits of the contract Corrigan had with the water works company, Green having fixed prices for the work which would yield enormous profits; and fixed them, it is fairly inferable from the evidence, with a view to his sharing with Cor-

rigan in the profits. But when Corrigan had a settlement with Mastin, the financial agent of Green's company, Mastin having discovered the fraud repudiated the contract and paid to Corrigan $50,000 less than the contract price for the work. Can it be said on the above state of facts that Green and Corrigan are *in pari delicto?* If the facts were as represented to Corrigan by Green, Corrigan neither perpetrated nor participated in any fraud. If Green's associates were willing to let him stand in with Corrigan, Green was guilty of no fraud; but when it is shown that there was no such agreement between Green and his partners he is the only guilty party to the contract he seeks to enforce. Corrigan committed no fraud in admitting Green to share in his profits, unless he confederated with Green to procure by fraud enormous prices for the work, and the only evidence of such confederacy are the facts that he admitted Green to share the profits, and Green did obtain exorbitant prices for the work. It is to be borne in mind, however, in this connection, that there is no charge in the pleadings of such fraud against Corrigan.

If it is true, and the testimony leads me to that conclusion, that Green induced Corrigan to believe that he had the consent of his co-partners to stand in with Corrigan, I cannot see where, either in his contract with the water works company or with Green, he committed or participated in a fraud. The main features of this case distinguish it from all those cited by respondent in his brief; nor is it like any of the cases cited by appellant's counsel. We do not now controvert the doctrine announced in the cases cited by respondent, with which *Kitchen v. Greenabaum* and *Hunter v. Whitehead, supra,* are in line, although some of them carry it so far as almost to amount to judicial sanction and protection of fraud. Those cases are, however, inapplicable to this. I am satisfied that no case

can be found with such features as are presented in this, where the defendant has been denied the right to set up the fraud of the plaintiff as a defence to his action. Corrigan had the right to get the highest prices for his work in a contract with a company which had undertaken it. He sustained no relation to the water works company, or the parties who were using its name, which made it a fraud for him to procure the best prices he could induce them to give him for his work, and there is no charge in the pleadings, or testimony on the trial, proving that he used any other unfair means to get exorbitant prices, except his association of Green with him in the contract, and that was not a fraud on his part upon Green's partners if they were consenting to it as Green represented, or if Corrigan believed Green's statement that they were consenting to it. It is not alleged by plaintiff that Corrigan participated in any fraud upon the company. The only fraud alleged against Corrigan relates to his final settlement with John J. Mastin, the financial agent of the water works company, or, rather, the financial agent of the company composed of the Mastins, Green and Donnell, Lawson & Company. *Fraud, if proved,* cannot affect the *contract* between Corrigan and the water works company, or the *contract* between Green and Corrigan.

But respondent contends that the question of whether the parties were *in pari delicto* was not raised, either by the pleadings or the evidence. Defendant in his answer averred the relations existing between Green and the water works company, and alleged the invalidity of the contract made between him and Corrigan. All the evidence in relation to Green's fraud in making that contract and all that relating to his conduct in fixing the prices for the work was admitted without objection. Plaintiff read Corrigan's deposition in his own behalf, in chief, in which the testimony first appears as to Green's representations to him that he " Green was to stand in

with him," etc. Corrigan testified as a witness at the trial and repeated it without objection, and no evidence offered to prove fraud against Green was objected to by him. The representations made by Green to induce Corrigan to make the alleged partnership agreement were a part of the *res gestae*, admissible in evidence as a circumstance to show Green's fraud in the transaction, and, while admissible for that purpose, it also shows that, even if Green, under the pleadings, could introduce evidence to prove Corrigan guilty of any other fraud than that specifically charged, with regard to Corrigan's settlement with Mastin, he was far less guilty than Green.

It is true that Corrigan did not specifically plead that he was not *in pari delicto* with Green. If he had, he would have admitted his guilt when he was charged with none. No fraud was charged against Corrigan by Green, either in his contract with Green, or in that with the water works company. Green denied, throughout his pleading, and in his testimony that there was any fraud in either contract. The only charge of fraud was made against Green and on that Green took issue and the evidence on that issue was relevant. The testimony which shows that Corrigan was not equally guilty with Green, if it shows any fraud on the part of Corrigan at all, was inseparably connected with the proof of fraud against Green, was not objected to at the trial, and was fairly before the court for its consideration.

The issues and testimony in this cause are of a character which compel the use of terms which are disparaging to the party to whom they are applied, and we would abstain from using them if possible, and only employ them in the light of the pleadings and the testimony.

The judgment is reversed. Norton and Ray, JJ., concur. Sherwood, J., concurs in the result. Black, J., having been of counsel, not sitting.

The State ex rel. v. The St. Louis Court of Appeals.

SHERWOOD, J., CONCURRING.—I concur in reversing the judgment; but I do not concur in some of the observations in the foregoing opinion. Ever since this cause was argued the first time in this court I have been of opinion that on the facts contained in the record the plaintiff had no standing in court and the re-argument of the cause has only confirmed me in my original view of the matter. If the parties are *in pari delicto*, it is clear the plaintiff cannot recover. And, on principle, it is unimportant when or at what stage of the trial the *delictum* appears, for whenever it does appear it taints the whole transaction from center to periphery; and precludes any recovery on behalf of either party. On the theory of the majority opinion, however, as Corrigan was in no fault; as his hands were clean, there is no margin for invoking the maxim referred to or of discussing it in any one of its numerous aspects. But it does not help Green because the maxim is improperly invoked here; for he being *in delicto*, it matters not that no one else participates therein. In either case public policy forbids any recovery by him. If he could not recover when the other party as well as himself is in fault, then *a fortiori* he cannot do so when he alone is in fault.