# TURNER v. OVERALL et al., Appellants.

### Division Two, February 24, 1903.

1. **Equity**: DEED OBTAINED BY DURESS: EXCLUSION OF TESTIMONY. Where in a suit to set aside a deed of trust as having been obtained through duress, all the evidence is preserved in the record, the appellate court, in making up its findings, can consider what testimony is competent, and exclude what is incompetent.

2. ——: ——: ——: ESTOPPEL. Where defendant, by his answer in a suit to set aside a deed of trust as being the result of duress, invites testimony tending to impeach the validity of the indebtedness secured thereby, he is not in a position to insist that such testimony is incompetent on the ground that the validity of the debt was not questioned in the petition.

3. ——: ——: FREE AGENCY. If the action of the beneficiary or of those acting with him operates to deprive a married woman of her free will and agency in executing a deed of trust on her lands to secure the payment of her husband's debts, such action is duress, and authorizes the mortgage to be set aside.

4. ——: ——: LATITUDE OF EVIDENCE. In an equitable action to set aside a written instrument as having been obtained through duress, great latitude in the admission of evidence should be allowed, and all acts and declarations of the parties tending to throw any light upon the issue should be admitted.

5. ——: ——: MARRIED WOMAN'S DEED: COMPETENCY OF HUSBAND AS WITNESS. In the investigation of a transaction which resulted in the giving of a deed of trust by a married woman on her lands to secure her husband's debts, charged to be the result of duress upon her, he is a competent witness in her behalf.

6. ——: ——: ——: IN PARI DELICTO WITH HUSBAND. A married woman who, enfeebled by bad health, amid great excitement, executed a deed of trust on her land to secure the payment of her husband's debts, in consideration of a promise by the beneficiary that her husband would not be taken back to the state where he is indicted for forgery, and that his whereabouts will be concealed, is not so *in pari delicto* with the beneficiary as to bar a decree in her behalf setting aside such deed of trust.

7. ———: ———: ———: LAND PAID FOR BY HUSBAND. The fact that land was purchased by the husband at a time he was insolvent and the title placed in his wife in order that she might have a home, will not preclude her from having set aside, as being the result of duress, a deed of trust given to secure the payment of her husband's debts.

8. ———: ———: ———: FACTS IN CASE. A husband owed debts in Tennessee and came to Missouri and bought lands and deeded them to his wife. He was afterwards indicted for forgery, and a requisition from the Governor of that State was issued, and appellant accompanied by two officers, came to Missouri and obtained a note for his debt from the husband, and then visited the circuit judge, who informed them that the requisition would have to be honored by the Governor of this State before they could arrest the husband. Thereupon, they visited the wife, who was at a neighbor's in bed, and in bad health, and appellant informed the neighbor he desired a private conversation with her. Appellant took the two officers with him to her room, and shortly afterwards she executed a deed of trust on her land to secure the payment of her husband's note, and then the appellant and the officers returned to Tennessee without any further attempt to secure the return of the husband, but afterwards he was arrested and the indictment dismissed. *Held*, that these facts tend to corroborate the testimony of the wife that at the time she signed the deed of trust, appellant exhibited to her the requisition and informed her that unless she executed the deed of trust he would take her husband to Tennessee handcuffed and have him imprisoned under the indictment, but that if she would do so he would not trouble him any further, but would stop the prosecution and conceal her husband's whereabouts; and are sufficient to justify a finding that the deed of trust was obtained by duress of appellant.

Appeal from Stoddard Circuit Court.—*Hon. W. F. Ford*, Special Judge.

AFFIRMED.

*J. R. Young* for appellants.

(1) The evidence in this case offered by plaintiff wholly fails to sustain the petition, or to make out a case of any sort. Turner's own evidence impeaches him. Turner was a fugitive from justice. His crime was not one committed while under excitement, or in

the heat of passion, but was the product of his own degeneracy and artful cunning. His crime was one that forever destroys confidence in the one who commits it. He does not essay at any time to deny his guilt in the charge of forging his mother's name. He should not be believed in whole or in part. Mrs. Turner, the plaintiff, by falsehood sought to conceal the whereabouts of her husband, while he was evading the officers of the law on account of the commission of the crime of forgery. Even her marriage vows will not operate as an excuse for her assistance to him in his rascally conduct during his absence. She does not deny or offer to explain her conduct. Plaintiff testifies that the threats were made at first meeting, before she went after her husband; that Overall and the Fouches were present. She never mentioned the threats as made afterwards. The entire testimony shows that they went to Bloomfield to borrow the money to settle. There is no conflict of testimony to the effect that Turner was the first to mention the giving of the deed of trust after vainly trying to borrow the money at Bloomfield on the 12th, two days after plaintiff testifies that the deed of trust was the only thing that would satisfy the defendant. (2) Duress can never be presumed; it must be shown by evidence that is strong, clear and convincing, and that leaves no ground for reasonable doubt in the mind of the chancellor. Jackson v. Wood, 88 Mo. 76; Forester v. Scoville, 51 Mo. 268; Johnson v. Quarles, 46 Mo. 423. (3) From another point of view this is an action involving all the principles in an action to establish a resulting trust and must be proven by evidence that is clear and convincing and leaves no room for a reasonable doubt. Ringo v. Richardson, 53 Mo. 396; Modrell v. Riddle, 82 Mo. 31; Rogers v. Rogers, 87 Mo. 259; Burdette v. May, 100 Mo. 16; Taylor v. Van Schraeder, 107 Mo. 226; Steinberg v. Ins. Co., 49 Mo. App. 265. (4) Actual intimidation must be shown clearly and must be of such a character as to control the will of the grantor. Threats of legal proceedings are not duress. Claflin v. McDonaugh, 33

Vol 172 mo—18.

Mo. 412; Davis v. Luster, 64 Mo. 43; Wilkerson v. Hood, 65 Mo. App. 491; Dausch v. Craine, 109 Mo. 323; Bell v. Campbell, 123 Mo. 1; Wolf v. Marshall, 52 Mo. 171; Turley v. Edwards, 18 Mo. App. 676. (5) The valid and voluntary execution of the deed of trust in question can only be overthrown by clear and convincing testimony. Barrett v. Davis, 104 Mo. 549; Clark v. Edwards, 75 Mo. 87; Rust v. Goff, 94 Mo. 512; Bell v. Campbell, 123 Mo. 1; Turley v. Edwards, 18 Mo. App. 676. (6) If plaintiff's statement is true it goes no further than to show that plaintiff and her husband were on equal footing with defendants and *in pari delicto*. There was no overcoming the will of grantors. According to their statements as they appear in the testimony, if they are to be believed at all, plaintiff and her husband were *participes criminis* in the alleged compounding of the felony and the court should leave them where it finds them. Bell v. Campbell, 123 Mo. 1; Turley v. Edwards, 18 Mo. App. 676. The plaintiff was acting under advice and in connection with her husband, and even if the purpose of the conveyance was to shield her husband and was made on account of fear of his arrest, for a crime he had committed, plaintiff should not recover. Compton v. Bank, 96 Ill. 301. (7) If Turner had been subjected to duress he could not get relief without discharging his honest indebtedness, for it is not the purpose of the law to assist men in avoiding their just obligations. Fry v. Piersol, 166 Mo. 438. (8) (a) The evidence of Turner as to the correctness of the amount settled upon and for which he gave his note should not have been admitted and defendant's objection should have been sustained for the reason that no issue as to the validity of the indebtedness for which the note was given was raised by any pleading, and because the evidence should correspond to and be confined to the allegations in the petition. Defendant's objection to evidence of Geo. Turner as to threats made to him without showing that plaintiff was present, should have been sustained for the reason that no duress of witness Geo. Turner is alleged in the petition. Rutledge v. Railroad,

110 Mo. 312; Halpin v. School District, 54 Mo. App. 371; White v. Chaney, 20 Mo. App. 389; Brooks v. Blackwell, 76 Mo. 309; Steinberg v. Ins. Co., 49 Mo. App. 265; Chitty v. Railroad, 148 Mo. 65. (b) Nor can plaintiff's right to recover be enlarged by any subsequent pleadings. Recovery must be on petition. Whipple v. Cooper B. & L. Ass'n, 55 Mo. App. 554; Gaty v. Clark, 28 Mo. App. 341; McMahill v. Jenkins, 69 Mo. App. 279; Crawford v. Spence, 36 Mo. App. 78; Judy v. Duncan, 21 Mo. App. 548; Randolph v. Frick, 57 Mo. App. 405.

*George Houck* and *J. L. Fort* for respondent.

(1) It is true the petition does not allege the validity or invalidity of the debt that the deed of trust was given to secure, but the defendant's answer alleges its validity, and the replication denies it, and hence its validity became an issue in the trial. Powell v. Sherwood, 63 S. W. 485; Ricketts v. Hart, 150 Mo. 64. Besides this, appellant attempted to prove the validity of the debt in his depositions and he can not now be heard to complain, because an issue was tried which he pleaded and sought to prove. (2) The husband's interests in the land covered by the deed of trust made him a competent witness. Steffew v. Bauer, 70 Mo. 399; Tygard v. Falor, 63 S. W. 672; Adair v. Mette, 156 Mo. 496. (3) However, this is an equity case and the disputed fact in issue is of such a character that the trial court was warranted in admitting every act and declaration of the parties preceding or following the date of the deed of trust that could throw any light upon what really took place on that occasion. Considerable latitude of inquiry must be allowed upon the trial of such an issue. Songer v. French, 157 N. Y. 213. It is uniformly held by the courts of last resort in this State that in proceedings in equity such courts do not pass on exceptions to the admission or rejection of evidence when all the evidence is contained in the record, as they can consider what is competent and exclude what is incompetent in their findings. Reynolds v. Kroff, 144 Mo. 448; Baxter

v. Donnell, 69 Mo. App. 590; Harlan v. Moore, 132 Mo. 483; Padley v. Neill, 134 Mo. 372; Green v. Ditsch, 143 Mo. 1; Synod v. Schoenerch, 143 Mo. 659; Goodrich v. Harrison, 130 Mo. 269. (4) Where a wife, because of threats to prosecute and imprison her husband on a charge of forgery is induced against her will to sign a note and deed of trust covering her own land, it will be held that the contracts as to her are invalid. Nessinger v. Dyer, 147 Mo. 219. The respondent is not *in pari delicto* with defendant. Green v. Carrigan, 87 Mo. 359; Bell v. Campbell, 123 Mo. 1; Turley v. Edwards, 18 Mo. App. 677. A note given for the purpose of preventing a criminal prosecution is against public policy and void. Baker v. Ferris, 61 Mo. 389; McCoy v. Green, 83 Mo. 632; Sprigg v. Rooney, 104 Mo. 358; The Cheltenham Company v. Cook, 44 Mo. 39. It is not necessary that a criminal prosecution should actually be pending; it is sufficient if a prosecution be threatened, and the fact, where it is a fact, that the defendant is guilty of the crime to which the threat relates, does not aid the contract or make it less void on that account. Adams v. Bank, 116 N. Y. 606; McMahan v. Smith, 36 Am. Rep. 147; s. c., 26 L. R. A. 804. (5) The respondent being a surety for her husband, may avoid the deed if it was executed by him under duress, even if she executed it voluntarily. The husband is the only witness by whom his duress can be established, and hence, his testimony was admissible on the ground of necessity. State v. Newberry, 43 Mo. 433; Barr v. Armstrong, 56 Mo. 586; Sauter v. Crutchfield, 28 Mo. App. 150; Giddings v. Bank, 104 Iowa 676.

FOX, J.—This is an action by respondent against the appellant, W. H. Overall, to cancel a deed of trust executed by plaintiff and husband to secure the payment of a note of $1,350 payable to W. H. Overall.

The petition, answer and replication present the issues fully, and in order to intelligently understand just what the issues were as presented and tried by the lower court, we here insert them.

Petition.

"Plaintiff, Novella Turner, states that she is now
and at all the times hereinafter named has been, the
owner in fee of the following described real estate sit-
uate in the county of Stoddard and State aforesaid, to-
wit, the west half of the northeast quarter of section
thirty-five, in township twenty-seven, range eight. That.
on October 12, 1896, she and her husband, George Tur-
ner, executed a deed of trust on the above described real
estate to the defendant N. M. Fouch, as trustee, for the
benefit of the defendant W. H. Overall, to secure the pay-
ment of a note of that date for the sum of $1,350, payable
to the said W. H. Overall on July 1, 1897. Plaintiff states
that at the time of said execution of said deed of trust
she was and still is the wife of the said George Turner,
and that at the time she executed said deed of trust there
was pending in the circuit court of DeKalb county, in
the State of Tennessee, a bill of indictment against her
said husband, the said George Turner, wherein and
whereby her said husband was charged with the crime
of forgery. That her said husband was not guilty of
said crime and that said indictment was falsely and
fraudulently procured from the grand jury of said
county against her husband by the defendants for the
purpose and with the intent of procuring from this
plaintiff said deed of trust or other security for the pay-
ment of an alleged claim held by them against plaintiff's
said husband in said sum of $1,350, and on the day afore-
said, to-wit, October 12, 1896, the said defendant asked
and demanded of the plaintiff that she should sign and
execute said deed of trust upon her land above de-
scribed, which was her home, and all she had to secure
the same; that upon her refusal to comply with their
demands and to sign and execute said deed of trust, the
said defendants, W. H. Overall and N. M. Fouch, told
the plaintiff that they had in their possession extradition
papers duly signed and executed by the Governor of the
State of Tennessee under and by virtue of which they
had full and complete authority to arrest the plaintiff's
husband, the said George Turner, and to take him back

to the State of Tennessee, where he would be prosecuted and convicted and sent to the penitentiary for said alleged offense, and that said defendants did then and there present and show to this plaintiff a large paper having thereupon the name of the Governor of Tennessee and a large red seal thereupon to which was attached a ribbon and which they declared was the extradition or requisition papers aforementioned, and both of the defendants then and there said to this plaintiff that unless she would sign and execute said deed of trust upon her land to secure the said sum of $1,350, which the defendants then claimed against her said husband, the said George Turner, they would immediately arrest her said husband and carry him back to the said State of Tennessee and would prosecute and convict and send him to the penitentiary; but that if she would sign and execute said deed of trust as they wished and requested her to do, they would not have her said husband arrested and prosecuted upon the charge aforesaid, and would not inform the officers of the law of his whereabouts; that plaintiff, fearing that said defendants would carry out their said threats to have her said husband arrested and prosecuted aforesaid, and relying upon their promise that they would not have him arrested and prosecuted upon said charge of forgery and that they would not inform the officers of the law of the whereabouts of her said husband and in consideration of this promise only, she did sign her name to said deed of trust and did acknowledge the same which were done by the direction of said defendants, and plaintiff did afterwards deliver said deed of trust to the defendants for said purpose. Plaintiff states that when she was informed by the defendants that an indictment was pending against her said husband in which he was charged with the crime of forgery, the same was so sudden and so excited and unnerved her that she could not deliberate upon the matter and in fact did not know what to do. That defendants observed her condition and took advantage of it under the circumstances, knowing that plaintiff was greatly confused and disturbed and that she was easy

to be made a' victim of their artful and importunate cunning. That defendants refused to give this plaintiff time to consult disinterested friends or counsel but they demanded that she should act, saying that if she did not act at once they would arrest and take her husband away under said papers and prosecute him as aforesaid. Plaintiff says that she was not upon equal terms under the circumstances with the defendants; that she did not know at the time and had no idea that the said charge against her husband had been trumped up by the defendants for the purpose of procuring from her the deed of trust aforesaid to secure the payment of an alleged indebtedness of her husband to them or one of them, and could not have known so unless she had ample time to think over the matter and to learn the facts in connection therewith, and defendants refused to give her any time to consider the matter or consult with friends and that under the circumstances being ignorant of the facts and greatly agitated and under the importunity of the said defendants, was entirely unable to protect herself and therefore signed and executed said deed of trust. That she was overwhelmed with the information that her husband had been guilty of forgery and on the 'spur of the moment' and under the importunity of defendants as aforesaid and in the hope on her part of saving the family honor she executed the deed of trust and delivered the same to these defendants and that she had no other, further or definite consideration for doing the same than as above set forth and pleaded. Premises considered, plaintiff prays the court to annul, set aside and declare absolutely void the deed of trust aforesaid and to order and decree that the same be delivered to this plaintiff for cancellation, and plaintiff further prays the honorable court to cause the defendants to produce in court and to deliver to this plaintiff such other and further releases as may be necessary and proper in the premises to fully relieve her title from the cloud and burden cast upon it by said deed of trust and for all other proper relief in the premises.''

Amended Answer.

"Now, at this time, comes defendant, and files this, his first amended answer, and for answer to plaintiff's petition, denies each and every allegation therein contained, except that plaintiff, with her husband, executed the deed of trust described in plaintiff's petition, of her own free will and accord, to secure the indebtedness of her husband as described in said deed of trust.

"Defendant, further answering states that on the — day of January, 1896, Robert Turner, alias George Turner, husband of plaintiff, and plaintiff were living in the county of DeKalb, in the State of Tennessee; that said husband of this plaintiff, at said date, became indebted to defendant, W. H. Overall, in the sum of seventeen hundred dollars; that at said time said husband of plaintiff, Robert Turner, alias George Turner, was in solvent circumstances, and that plaintiff had no estate of her own, except that which she acquired through her said husband; that said Robert Turner, alias George Turner, at said time put all of his available assets into cash and emigrated, with plaintiff, from DeKalb county, Tennessee, to Stoddard county, Missouri, and with the assistance of this plaintiff, concealed his whereabouts from this defendant and other creditors; that on March 12, 1896, said Robert Turner, alias George Turner, purchased with his own money the real estate mentioned in plaintiff's petition, and took the deed in the name of his wife, this plaintiff; that on October 12, 1896, plaintiff, at her own instance, and without any duress on the part of defendants, or any one for them, and without any solicitation on his part, or on the part of any one of them, but recognizing that defendant could move onto the assets and real estate in her hands for the satisfaction of her husband's indebtedness to defendant, W. H. Overall, executed said deed of trust described in plaintiff's petition, to secure her said husband's indebtedness to defendant, W. H. Overall, and to which said indebtedness said real estate was liable to be made subject. Defendant states that plaintiff was not surprised by facts concerning said indebtedness of her husband, and that

she concealed the whereabouts of her said husband, Robert Turner, alias George Turner, when defendant visited him to collect said indebtedness, and that before executing said deed of trust, plaintiff had ample time to consider the proper course to pursue, and made a visit to Bloomfield, Missouri, after her interview with defendant, and there made an effort to borrow money to discharge said indebtedness, and plaintiff had ample time and opportunity to consult counsel, while at Bloomfield, Missouri, and before making said deed of trust. Plaintiff further states that on September 7, 1897, said real estate was sold under the said deed of trust and according to its terms, James A. Evans, the sheriff of Stoddard county, Missouri, acting as trustee, the trustee, N. M. Fouch, refusing to act; that defendant, W. H. Overall, was the best and highest bidder at said sale, and became the purchaser of said real estate, and secured the trustee's deed therefor, and is now the owner of said real estate, and is entitled to its possession. Wherefore, defendant prays the court to dismiss plaintiff's bill at her cost, and declare the title of said real estate in defendant, W. H. Overall, and that defendant, W. H. Overall, have restitution of said premises, and for such other and further orders, decrees and judgments as to the court may seem proper and in accordance with good equity.''

Replication.

''Now comes the plaintiff, and for replication herein, denies each and every allegation of new matter in defendant's answer set out and pleaded, and again prays judgment.''

It will be observed that the vital issue, as presented by the pleadings in this cause, is as to whether the deed of trust sought to be cancelled by the respondent was executed on her part under duress; was procured through threats of the prosecution of her husband for forgery, and under the promise, if she would execute it, that her husband's whereabouts would not be revealed. This case is not dissimilar to that of many others pre-

sented to the courts for adjudication; the testimony is very conflicting.

The respondent in this cause is a married woman, the wife of one George Turner. They formerly resided in Tennessee; before leaving that State, her husband, George Turner, become indebted to appellant, W. H. Overall. It also appears that George Turner, the husband of respondent, was charged by indictment in the State of Tennessee, with the crime of forgery. Respondent and her husband left Tennessee and located in Stoddard county, Missouri. After respondent and her husband were located in Puxico, Stoddard county, Missouri, the Governor of Tennessee issued a requisition on the Governor of Missouri, for the husband of respondent. E. A. Fouch was named as agent of the State of Tennessee to execute the requisition. He and his brother, N. M. Fouch, armed with the requisition, set out for Missouri, the appellant in this cause, W. H. Overall, accompanying them, as he says, for the purpose of securing his debt from George Turner, the husband of respondent. E. A. Fouch learned, so he says, through Judge Fort, that the requisition issued by the Governor of Tennessee was ineffective to secure the arrest of George Turner, without its first being presented to the Governor of Missouri, in order that he might issue the proper authority for the arrest of the husband of respondent. This agent, so far as the record discloses, did not attempt to have his requisition honored by the Governor of Missouri. On October 10, 1896, the two Fouch brothers and appellant, Overall, went to the house of a Mr. Puckett; Mrs. Turner was there. It is here where the conflict of testimony appears. As we are called upon to pass upon the action of the trial court in entering the decree in this cause, we here insert a portion of the testimony (the most important part) of Mrs. Turner and George Turner.

Mr. Turner testifies that he first saw the defendants after removing from the State of Tennessee to the State of Missouri in Puxico, Missouri; that at the time the defendants were in Puxico, Missouri, he was " 'kindo'

on the dodge;'' that Clarence Reed had told him that defendants had a requisition for him; that defendant Overall told him when he went back to Puxico, where Overall was, that there were seven indictments against him in the State of Tennessee.

He also says that Overall claimed that he (Turner) owed him $1,600. Then this question was asked Mr. Turner:

''Q.  Did you owe him [Overall] $1,600 at that time?  A.  No, sir.

''Q.  How much did you owe Overall at that time? A.  About $850.

''Q.  Did Mr. Overall in that conversation admit to you that $850 was all that you owed him?  A.  Yes, sir.

''Q.  I will get you to state to the court how much you paid him?  A.  I paid him $250 in money and gave him a note for $1,350.

''Q.  Just state how you came to give him $250 in money and a note for $1,350, when you only owed him $850.  A.  He said he had a paper to carry me back to Tennessee, if I did not pay him $1,600.

''Q.  What did he say he would do if you would pay him $1,600?  A.  He said he would go back to Tennessee and make things easy and there would be no further prosecution.

''Q.  What did Mr. Overall say that Mr. Fouch had the papers for, or what did he say they wanted you back in Tennessee for?  A.  He did not say they wanted me back in Tennessee for anything, but said if I did not pay him the $1,600 he would take me back there.

''Q.  What did Overall say he would do if you would settle with him according to his terms?  A.  He said that if I would settle with him according to his terms he would not take me back and would keep everything quiet and that I would not be prosecuted or have any further trouble about it.

''Q.  State to the court whether you executed this note of $1,350 and paid him $250 in money because he promised you that if you would do so he would see to it

that you were not prosecuted? A. That is the only reason I paid him the money and made him the note."

Mrs. Novella Turner testified as follows:

"Q. What relation are you to the witness, George Turner? A. I am his wife.

"Q. Where did you move from when you came to Stoddard county? A. From Tennessee—DeKalb county.

"Q. Did you furnish any part of the money that bought the piece of land described in this suit? A. No, sir.

"Q. Did you know at the time that this deed to this piece of land was made to you that your husband George Turner was indebted to parties in DeKalb county, Tennessee. A. Yes, sir.

"Q. What was your object in having the deed made to you and in your name? A. Well, in order that if my husband should die in the meantime and fail to pay the debt that I would have a home.

"Q. Now, Mrs. Turner, just tell the court in your own words, as near as you can, every word that passed between you and Mr. Overall, and you and either one of the Fouches in the presence of Overall, at that time and place? A. He asked me about my health and I told him my health was bad and had been for several months past, and he also spoke to me about looking bad and excited; then he asked me where my husband was. I told him I did not know. He then said he came for my husband and had a requisition signed by the Governor of Tennessee and by the Governor of Missouri, and had the privilege of taking him back to Tennessee handcuffed and would imprison him for forgery, as there were seven indictments against him for forgery, and said that his mother had caused one of them to be found. I told him that I did not know anything about it. He asked me if the land was in my name. I told him it was. He said that he had come to collect some money that my husband owed him and asked if my husband had any money. He asked me if my husband did not have quite a lot of stock as well as land.

"Q. Did he show you any papers at that time? A. Yes, sir. He said that Mr. Fouch had a requisition signed by the Governor of Tennessee and also by the Governor of Missouri. Mr. Fouch then took the papers from his pocket and I saw the seal and saw that they were papers of that kind.

"Q. Give a description of the papers that Mr. Fouch showed you and which he took out of his pocket? A. They were large papers bearing the signatures of the Governor of Tennessee and the Governor of Missouri; the paper also had a large red seal and a blue ribbon stamped on the same.

"Q. Now, did Mr. Overall point to these papers and say that they were papers authorizing them to take your husband back to Tennessee? A. Yes, sir.

"Q. Did they arrest and take your husband back at that time on those papers? A. No, sir.

"Q. What did Mr. Overall say about the number of indictments against your husband? A. He said there were seven indictments against him.

"Q. What did he say he would do with your husband if you would fix up the claim? A. He said he would go back satisfied and would conceal the whereabouts of my husband.

"Q. What did Mr. Overall say about having the proceedings stopped against your husband? A. He said he would have them stopped and there would be no further trouble.

"Q. Mrs. Turner, you of course know whether you executed that deed of trust willingly or unwillingly? A. I thought that was all that I could do to keep my husband from being carried back to Tennessee handcuffed and imprisoned.

"Q. Did you execute it voluntarily? A. No, sir.

"Q. I will get you to state to the court if it was not your purpose in taking a deed to this piece of land in your name to keep Mr. Turner's creditors from getting the land? A. Yes, sir.

"Q.   I will get you to state to the court if afterwards your husband was arrested and taken to Tennessee?   A.   Yes, sir.

"Q.   State if they did not dismiss the prosecutions against your husband when he got there?   A.   Yes, sir.

"Q.   What was the condition of your health and strength at the time you first met Mr. Overall at Puxico and what had been the condition of it for months previous to that time?   A.   My health was bad and had been for six months previous to that time and I was in bed when they came.

"Q.   And you say that Mr. Overall remarked that you looked very bad and weak when he began talking to you?   A.   Yes, sir.

"Q.   If you have any reasons to give or explanations to make why you did not employ an attorney when you went to Bloomfield, you may make that explanation?   A.   I thought all I could do was to give the deed of trust or they would carry my husband back to Tennessee, and I did not think that consulting an attorney would change the minds of these men."

George Turner recalled.

"Q.   You may state what became of the prosecutions against you when you were taken back to Tennessee, if you know?   A.   They were dismissed and I paid the costs."

The deed of trust was introduced on the part of the appellant, and he testified, plainly contradicting every statement made by the respondent.   That is to say, he contradicted all of her testimony which is important to her right of recovery, and states that the deed of trust was executed willingly and voluntarily and that he held out no inducements or promises for its execution.   The appellant's testimony is fully corroborated by E. A. and N. M. Fouch, both of whom make about the same statements as to the execution of the deed, as the appellant does.   It was admitted that plaintiff had the legal title to the land in controversy at the time of the execution of the deed.   There was other testimony, but as it was

collateral to the main issue, that of duress, it is unnecessary to notice it in detail.

Upon the evidence as indicated herein, the cause was submitted to the court and it found the issues for the plaintiff, and entered its decree cancelling and holding for naught the deed of trust executed by the plaintiff. From this decree, defendant appealed to this court, that the alleged assignment of errors might be reviewed.

Opinion.

Appellant's assignment of errors are:

1. The court erred in admitting testimony tending to impeach the validity of the indebtedness when there are no allegations in the petition charging that the indebtedness was not correct and just.

2. . The verdict and judgment was against the decided weight of the testimony and against the law.

The Issues.

1. Was the deed of trust obtained by duress and threats of arrest and imprisonment of respondent's husband?

2. Did appellant promise respondent he would not prosecute her husband if she would sign the deed of trust, and was the execution of the deed illegal and against public policy?

It will be observed that the appellant, in his assignment of errors, directs the court's attention to the complaints he desires reviewed and, in addition, plainly sets forth the issues involved in this controversy. As was very appropriately said by Sherwood, J., in case of Lins v. Lenhardt, 127 Mo. l. c. 280, "this cause is, to a large extent, *a fact* case." The learned judge in that case further says, "When an equity cause comes up to this court, it is for hearing *de novo,* and it will be considered, for the most part, as if it originated here and was to be heard for the first time."

The first assignment of error, "that the court erred in admitting testimony tending to impeach the validity

of the indebtedness, when there are no allegations in the petition charging that the indebtedness was not correct and just," is without merit.    Even if this testimony is incompetent and inadmissible, all the evidence is preserved in the record, and as was announced in the case of Reynolds v. Kroff, 144 Mo. l. c. 448, "we can consider what is competent and exclude what is incompetent in our findings."    And it may be further added that appellant is not in a favorable position to insist upon this error, for the reason that he invited by his answer this character of testimony, putting in issue the validity of the indebtedness; however, this court is of the opinion that this decree is based upon the allegations in the petition and must be supported by the evidence upon that issue.

The second assignment of error is of more importance, because the result of our conclusions upon that assignment settles this controversy.

Learned counsel for appellant very ably presents in his brief the legal principles by which controversies of this character should be measured.    The doctrine announced in the numerous cases cited is not in dispute. After going over the entire field, it must be remembered, we are led back to the one proposition, and that is, did the testimony in this cause support the conclusions reached by the chancellor in his decree?

We take it, and doubtless it will not be seriously disputed, if the testimony offered by respondent is to be believed, then the judgment of the lower court was right and supported by every principle of equitable jurisprudence.    On the other hand, if the testimony offered by the appellant is to control, then this cause should be reversed.    If plaintiff, Mrs. Turner, was deprived of her free will and agency in the execution of the deed of trust, by the action and conduct of the appellant and those who were acting with him, in respect to the arrest and prosecution of respondent's husband, this was duress in contemplation of law, of such character as to avoid her deed.    [Hensinger v. Dyer, 147 Mo. 219.] In case of Bell v. Campbell, 123 Mo. 1, there is quoted

with approval the following from Earle v. Norfolk, etc., Co., 36 N. J. 192: "Whatever destroys free agency and constrains the person whose act is brought in judgment to do what is against his will and what he would not have done if left to himself, is undue influence, whether the control be exercised by physical force, threats, importunity, or any other species of mental or physical coercion."

Before proceeding to discuss the testimony in this cause, it would be well to merely mention what we deem the correct rule as to the admission of testimony in equitable cases of the character of the one presented to us for our determination. Great latitude must necessarily be allowed in the investigation of cases like the one at bar. All the acts and declarations of the parties tending to throw any light upon the issue should be admitted. As is said by the counsel for respondent, "actions speak louder than words." Conversations may apparently be immaterial, yet if they show the tendency of the mind as to the subject before the court, they should be received. With these elementary principles before us, we are led to the investigation and discussion of the testimony in this cause.

We will say at the outset, that we have carefully read in detail the entire testimony in this cause. If the simple words of the testimony are to be considered, the evidence greatly preponderates on the side of the appellant; but, on the other hand, if the situation of the parties, the acts of the appellant and those in company with him, the entire surroundings of the transaction when it was consummated and the final results of the transaction, with all proper and legitimate inferences to be drawn from such acts and surroundings are considered, then the preponderance of evidence is with the plaintiff, Mrs. Turner. Preponderance of evidence does not necessarily mean the greatest number of witnesses; but it means that character of evidence, full of strength and weight, which when it is all considered, is stamped with strong and reasonable probability of

Vol 172 mo—19.

truth.    It is admitted by the record that Mrs. Turner
at the time of the execution of the deed of trust had the
legal title to the land embraced in the deed.    She was a
married woman, and in bad health.    It appears that the
appellant Overall and the Fouch brothers went out to
Puxico to see Turner; that they found Mrs. Turner at
Mr. Puckett's house.    They met Mr. Puckett at the
front gate; did not inquire for Mr. Turner, but in-
quired if Mrs. Turner was there.    They all three went
in and the appellant Overall said he wanted to have a
private conversation with Mrs. Turner.    Puckett went
out and left the three men, Overall and the Fouch broth-
ers in conversation with Mrs. Turner.    If it was a pri-
vate conversation he wanted with the respondent, why
was it so necessary for her neighbor Puckett to retire,
but the Fouch brothers to remain present at this *private
conversation.*    The Fouch brothers were not interested
in the debt of Overall; why the necessity of their pres-
ence and the necessity of the absence of Puckett, who
lived there in the neighborhood.    The fact of these three
parties, Overall and the Fouch brothers, being con-
stantly together on this trip, would strike the average
man as a little bit peculiar.    E. A. Fouch is selected
as the agent of the State of Tennessee to arrest George
Turner, a fugitive from justice.    The presumption is
that he wanted the fugitive; his brother accompanies
him on this trip, nothing unusual in that; but how does it
happen that the appellant obtains knowledge of this trip
and avails himself of this opportune time to collect a
debt?    He evidently concluded that there was some
force in the requisition, that could aid him.    He says in
his testimony that he told Mrs. Turner if he could see
her husband, he was satisfied that her husband would
settle with him; that they had been friends. If that was
true and the Fouch brothers were going to return with
George Turner to Tennessee, he would certainly have an
opportunity of seeing him then.    Moreover, if the pur-
poses of that long and expensive trip was to arrest
this man and the only thing wanting was the authority
from the Governor of Missouri, it strikes me it would

have been but a slight delay to have secured that author-
ity, after coming to Missouri. After being informed by
Judge Fort that it was necessary to have the authority
to arrest Turner from the Governor of this State, not
the slightest step is taken to have Missouri's Governor
honor the requisition; and this record is absolutely silent
as to any explanation why the main purposes of their
trip were so suddenly abandoned. If they just simply
concluded to abandon, for the present, any efforts to ar-
rest Turner, did it take all three of them to talk with Mrs.
Turner about the debt owing the appellant Overall? If
appellant's theory of this case is right, it would have
been much more appropriate for Mr. Overall, who alone
was interested in the debt, to have gone over  to see
Turner and his wife; but, instead, all three go over to
see Mrs. Turner, have a private conversation with a
lone woman, in bad health, with a knowledge that her
husband was being prosecuted, and now insists that she
was on equal footing with appellant in this transaction.
Mrs. Turner testifies that this land, it is true, was pur-
chased with her husband's money; that she took the
title to the land, for the reason that in the event of her
husband's death she might have a home. What in-
duced her to give up this home for her husband's debt?
It was a legitimate inference from all the surroundings
of this case, that some extraordinary power or in-
fluence was instrumental in securing this deed. The
conclusion is inevitable that had not respondent's hus-
band been under a criminal prosecution and the appear-
ance of these parties in Missouri, in a private conversa-
tion with Mrs. Turner, with a requisition for her hus-
band, the deed would not have been executed. In the
case of Bell v. Campbell, supra, SHERWOOD, J., in discuss-
ing that case, which had some similarity to this, in re-
spect to a woman's being influenced to execute a deed of
trust, says, "On the very morning that this most inde-
fensible transaction found its blameworthy consumma-
tion, this poor, ignorant, illiterate old woman, fast verg-
ing on the Biblical limit of three score years and ten,
for over three hours was kept on the rack of varying

emotions. Within that time every argument that could be advanced, was used, every chord of human feeling and affection that could be played upon was struck by the sordid hand of self-interest or the tremulous hand of anticipated punishment in the endeavor to swerve her from her purpose; how well it succeeded is a matter now of record.'' If Mrs. Turner is to be believed, she was in about the same ordeal that the learned judge described the woman to be in in the foregoing case. It was a rational inference under the facts disclosed in this case, that the respondent did not willingly and voluntarily execute the deed in dispute. Immediately after securing this deed of trust, in which one of the Fouch brothers was made trustee, they returned, all three of them, to the State of Tennessee. Came to Missouri, to arrest *a fugitive from justice* and returned to their State entirely satisfied with *a deed of trust on a married woman's land!* This is not a mere expression of sentiment, but is the plain statement of a result of a trip to this State, which we think has a strong tendency to corroborate the statement of Mrs. Turner, the respondent in this case.

It further appears in the testimony of Mr. Overall that he says that Mrs. Turner "says she signs it [meaning the deed] freely and voluntarily on her part."' What necessity was there for her to make these statements, if nothing had been said to induce her to sign it? One of the Fouch brothers says that in the conversation at Puckett's, Overall asked plaintiff to pay this debt. That he came at the suggestion of an attorney; that he came to give her a chance to settle without any cost. Why did he say this to this woman—she did not owe the debt? This sort of talk would indicate to any intelligent mind that the appellant was there, knowing that this woman owned the land, to get her to secure this debt. And from his anxiety to accomplish his purpose, we take it, from the facts disclosed in the record, that he was not very conservative in his inducements held out on that occasion.

It is insisted by appellant that the court erred in permitting the husband of plaintiff, George Turner, to testify and that his testimony was incompetent and irrelevant. It will be observed that this proceeding is connected with the transaction between the husband of plaintiff and appellant Overall. In fact, this suit is to cancel a deed of trust given to secure that debt. Under section 4656, Revised Statutes 1899, it is provided in one of the subdivisions that where the suit is connected with any business had with her husband, he is a competent witness in behalf of the wife. Aside from the statute, upon the broad ground as announced in the case of Henry v. Sneed, 99 Mo. 407, and approved in the cases of Moeckel v. Heim, 134 Mo. 576, and Cramer v. Hurt, 154 Mo. 112, this being a case in which a fraud is alleged to have been perpetrated upon a married woman, the defendant is in no position to ask, in the investigation of the fraudulent transaction, that the mouth of the husband be closed.

As to the relevancy of Turner's testimony we will say, as heretofore stated in this opinion, that the appellant created this issue by his answer, and is in no position to object to testimony being offered upon it, and it is competent and relevant, independent of the issue as to the validity of the debt, because it is as to declarations of the appellant indicating the appellant's determination to have the debt secured and further as tending to show the methods to be adopted in order to obtain the security for the debt desired.

It is further urged that, if respondent executed the deed of trust to prevent her husband from being taken back to Tennessee or for concealing his whereabouts, she and appellant are "*in pari delicto*" and therefore can not recover. This contention is fully answered by the cases of Bell v. Campbell, 123 Mo. 1, and Green v. Corrigan, 87 Mo. 359. They were not on equal footing and do not fall within the denunciation of that maxim.

Complaint is also made by appellant that plaintiff has no right to be heard in this proceeding, because the

debt is an honest one and the land held by respondent was paid for by her husband. There is no merit in this contention. While we have a high conception of the duty of the citizen as to paying his honest debts, and while we are by no means commending the character of George Turner, yet he did, in securing this home to his wife, what is frequently done by good husbands, in the way of providing homes for their wives. It is sufficient to say that the title to this land was in the wife and she has an undisputed right to have her interests protected under the law. We have endeavored to call attention to the testimony in this cause and have simply suggested the criticism that the testimony of the appellant is subject to as disclosed by the record. It may be that the entire trip of appellant and Fouch brothers from Tennessee to Missouri, and their actions in the comsummation of this transaction, may be susceptible of a reasonable explanation. If so, the record fails to disclose it.

All the circumstances, the condition and situation of the parties, corroborate the testimony of the respondent.

The trial court had the plaintiff and her husband before it; had the depositions of the witnesses offered by appellant and all the other testimony offered in the cause, and from all the evidence offered reached the same conclusion, as is fully indicated in the decree, and its judgment will be affirmed. All concur.