## GILCHRIST ET AL. v. HATCH.

[No. 22,724. Filed November 10, 1914. Rehearing denied June
17, 1915.]

1. CONTRACTS.—*Public Policy.*—*Relief.*—A complaint to set aside
a conveyance and recover the possession of real estate, from
which it appears that the plaintiff agreed with one of the de-
fendants, who was manager and the holder of a majority of the
stock in an oil company, to purchase stock therein to be paid for
by such conveyance and the execution of a note, in consideration
that plaintiff would be elected secretary and attorney for the
company at an annual salary, and whereby the other defendant,
to whom such manager was indebted was to receive plaintiff's
conveyance and note and discharge such manager's debt to that

extent, that plaintiff's purchase of the stock was induced by fraudulent representations of such manager as to its value and the productiveness of the company's wells, and that both defendants conspired to perpetrate the fraud and actually participated therein, though disclosing plaintiff's engagement in an illegal and void contract, shows a transaction entered into by plaintiff under such circumstances that equity will award him relief in furtherance of the public policy to thwart fraudulent promoting schemes. pp. 374, 378.

2. CONTRACTS.—*Illegality.—Relief.*—While it is the general rule that the parties to a contract illegal and void as against public policy will be treated as *in pari delicto* and will be left by the courts where they have placed themselves, there are exceptions whereby a party to such a contract is not necessarily debarred from relief, as where the public interest will be best promoted by granting it rather than by denying it, in which instance the guilt of the parties is not considered as equal to the higher right of the public and the guilty party to whom the relief is extended is deemed merely an instrument by which the public is served. p. 375

3. PLEADING.—*Demurrer.—Admissions.*—For the purpose of the ruling on a demurrer to a complaint it must be assumed that the theory of the complaint is based on fact. p. 377.

4. CONTRACTS.—*Public Policy.—Relief.*—It is not the policy of the law to restrict legitimate business dealings or to relieve a party from his own mistakes of judgment, but, in view of the character and effect of fraudulent stock-selling schemes which are matters of common knowledge, public policy requires that the purposes of their promoters be thwarted rather than that relief be denied to one who has been induced to enter into such a scheme. p. 377.

5. CONTRACTS.—*Illegality.—Relief.—Grounds.*—Although parties to a transaction have concurred in an illegal act, they are not regarded as equally guilty where one party has been induced into the contract through fraud, oppression or imposition on the part of the other, and under such circumstances equity will intervene whenever the public good requires it. p. 377.

6. NEW TRIAL.—*As of Right.*—Under §1110 Burns 1908, §1064 R. S. 1881, relating to new trials as of right, a new trial as of right could not be had where two or more substantive causes of action proceeded to judgment in the same cause, if one of such causes was of a character not embraced within the provisions of the statute. p. 379.

7. NEW TRIAL.—*As of Right.—Title to Realty.*—Where the whole theory of a complaint was that of a suit to annul a deed obtained by fraud, and to reinvest and quiet the title in plaintiff, the losing party was entitled to a new trial as of right under §1110

Burns 1908, §1064 R. S. 1881, although the contract on which the conveyance was based was set out in the complaint. p. 379.

8. APPEAL.—*Review.*—*Theory of Case.*—Although a complaint is fairly open to more than one construction, the court on appeal will adhere to the theory adopted by the trial court, if that construction is a reasonable one. p. 381.

9. NEW TRIAL.—*As of Right.*—*Effect of Issue Tendered by Cross-Complaint.*—In an action by plaintiff to annul a conveyance and quiet his title to the real estate, the plaintiff's right to a new trial under §1110 Burns 1908, §1064 R. S. 1881, was not affected by the fact that a defendant filed a cross-complaint in one paragraph of which an issue was tendered as to which a new trial as of right was not allowable. p. 381.

10. APPEAL.—*Review.*—*Findings.*—*Conclusiveness.*—The court on appeal does not weigh the evidence, but merely determines if there is any evidence from which the trial court might properly draw its conclusion; hence a conclusion of the trial court that one of the defendants had such knowledge of a fraudulent transaction by his codefendant as would prevent him from assuming the role of an innocent purchaser of plaintiff's land, in view of the opportunity of the trial court for testing the veracity of the witnesses, will not be disturbed; there being evidence to support it. p. 382.

From Superior Court of Marion County (70,878); *Clarence E. Weir*, Judge.

Action by Aretas W. Hatch against Hector M. Gilchrist and another. From a judgment for plaintiff, the defendants appeal. (Transferred from the Appellate Court under subd. 2, §1394 Burns 1914, Acts 1901 p. 565.) *Affirmed.*

*Pickens, Moores, Davidson & Pickens* and *Gavin, Gavin & Davis*, for appellants.

*Lew Wallace, Wm. N. Harding, Alfred R. Hovey, Leander J. Monks, John F. Robbins, James P. Goodrich* and *Henry C. Starr*, for appellee.

SPENCER, J.—Suit by appellee against appellants, Hector M. Gilchrist and Dewitt C. Griffith, to have annulled on the ground of fraud a certain deed wherein he had conveyed certain described real estate to Gilchrist, and to recover the possession of said real estate and to quiet title thereto.

The first assignment of error challenges the action of the

trial court in overruling appellants' demurrers to the complaint. From this pleading, which is in two paragraphs, it appears that on October 9, 1905, appellant Griffith was the treasurer and manager of the Mount Pleasant Oil Company and the holder of the majority of the stock in said company; that on said date he entered into the following written contract with appellee:

"This Agreement, made this 9th day of October, 1905, by and between Dewitt C. Griffith of the first part, and Aretas W. Hatch of the second part, Witnesseth: Whereas, said first party has this day sold and transferred to the second party shares of the capital stock of Mount Pleasant Oil Company, a corporation under the laws of Indiana, aggregating Ten Thousand Dollars ($10,000) par value, and the second party has paid to the first party the sum of Ten Thousand Dollars ($10,000) for said shares; and it was, and is, part of the consideration for said transaction that said parties enter into and bind themselves by this agreement. Now therefore, in consideration of the premises and of the mutual agreements herein contained, it is agreed between the parties hereto as follows: First, Said first party shall retain the ownership of a majority of the shares of the capital stock of said company and the second party shall retain the shares so purchased by him as aforesaid, until this arrangement shall be terminated by the mutual consent of the parties hereto; and while they so hold said stock, said parties hereto shall vote the same for the election of such other director or directors as they may agree upon. Second, Said parties hereto shall cause said directors to elect said Hatch the secretary and attorney of said company and said Hatch hereby agrees to accept such offices and perform the duties thereof; and the salary of such offices shall amount to ———, per annum. Said Hatch shall be elected and shall serve from year to year so long as this agreement shall continue in force and the parties hereto shall elect directors who will continue Hatch in said offices. Signed in duplicate the day and year first hereinabove written. D. C. Griffith, A. W. Hatch."

It further appears that Griffith was then indebted to appellant Gilchrist and it was therefore agreed that appellee should pay for his stock by conveying to Gilchrist a certain

piece of residence property and executing his note for $500; that Griffith was to receive credit in the amount of such consideration on his indebtedness to Gilchrist; that said agreement was carried out in full. The complaint then sets out in detail a state of facts showing that the purchase by appellee of the oil company stock was induced by the false and fraudulent representations of Griffith as to the value of the property owned by the corporation and as to the production of the various wells located thereon. No question is raised as to the sufficiency of the complaint in this regard and it is therefore unnecessary to set out the averments in detail.

The first paragraph alleges that Gilchrist had knowledge of the fraud practiced by Griffith and that he took the property in payment on an existing debt and for no other consideration. The second paragraph charges that Gilchrist conspired with Griffith to perpetrate the fraud and actually participated therein.

It is urged against this complaint that, on its face, it discloses that the contract under which the conveyance was made is illegal and void. In support of this contention, appellants rely on the general rule that a contract by a director or a majority stockholder of a corporation whereby he undertakes, in consideration of a private benefit or advantage accruing to himself, to secure the appointment of another to a lucrative office or a position of profit in the corporation is against common honesty and therefore against public policy. That when such a contract has been wholly or partially executed, the law will extend no relief, but will treat the parties as *in pari delicto* and leave them where they have placed themselves. *Hutchins* v. *Welden* (1888), 114 Ind. 80; *Overshiner* v. *Wisehart* (1877), 59 Ind. 135.

There are exceptions to this rule, however, and if we concede, without deciding, that the contract before us is against good morals, it does not necessarily follow that appellee,

·though a party to such contract, is without relief. The law relative to illegal contracts has its basis in public policy and the rule here invoked has been adopted for the benefit, not of the parties, but of the public. Where it appears, therefore, that the public interests will be better promoted by granting relief to the plaintiff than by denying it, courts of equity, acting with proper caution, will intervene, even though the parties are equally guilty. This exception to the general rule is thus concisely stated and supported by authority in 9 Cyc. 550: "Although the parties are *in pari delicto*, yet the court may interfere and grant relief at the suit of one of them where public policy requires its intervention, even though the result may be that a benefit will be derived by a plaintiff who is in equal guilt with the defendant. But here the guilt of the parties is not considered as equal to the higher right of the public; and the guilty party to whom the relief is granted is simply the instrument by which the public is served."

In the case of *Porter* v. *Jones* (1869), 46 Tenn. 313, 321, the reason for the exception and the test thereof are thus well stated: "while the rules of law which courts are bound to enforce in civil cases, have reference primarily, to the protection and enforcement of private rights, they are also subservient to the governing principle, that the safety and best interests of the community are paramount to any private interest. Therefore it is, that there are many cases in which, were the rights or interests of the parties only concerned, courts would absolutely refuse them aid; yet, as the public good demands a decision upon their claims, the courts will entertain the cause and make the decision. The decree is made upon the facts and the law of the private right; but the community is a *quasi* party to the cause; and for the protection of the community, courts may overlook the individual turpitude which has forfeited the private right, and make such decision, consistent with the public interests, as they would have made had the party been innocent. From

these principles, it follows, and thus it has been held, that the active interposition of equity to set aside and cancel an illegal contract, is matter of sound discretion in the court, and not of absolute right in the party. The inquiry is, has the complainant made such a case as would, were he innocent, entitle him to relief? And if so, does the best interest of society require that relief shall be afforded, notwithstanding the guilt of the party? If not, then the court will refuse its aid, and will leave the parties in whatever difficulties their conduct may have involved them.''

The complaint before us proceeds on the theory that appellee was induced through fraud to enter into the contract with Griffith and to purchase the stock of him. For the purposes of the ruling on the demurrer, at least, it must be assumed that such theory is based on fact. It is not the policy of the law to place restrictions on legitimate business dealings or to relieve a party from his own mistakes of judgment but it is a matter of common knowledge that fraudulent stock-selling schemes are a favorite resort with unscrupulous promoters who prey on the ignorant and credulous, and form a parasitic element within society, against which the latter is entitled to protection. As is said in one authority, ''public policy requires that their purposes should be thwarted and their nefarious schemes rendered less surely profitable, rather than that the continuance of that profit should be guaranteed by denying relief to the plaintiff and to others who should subsequently be placed in the same position as he.''

The cases which discuss the doctrine of illegal contracts are not without conflict and some of them seek to draw a distinction between offenses involving moral turpitude and acts which are in violation of statute law only. In cases which fall within the former class, it may not always be as clear that the public need demands that relief be given to a guilty plaintiff but the rule applicable

remains the same. The weight and trend of modern author-
ity seems to be that, although the parties to a transaction
have concurred in an illegal act, whatever it may be, they are
regarded as not equally guilty where one party has been in-
duced into the contract through fraud, oppression or im-
position on the part of the other, and under such circum-
stances equity will intervene whenever the public good re-
quires it. *Green* v. *Corrigan* (1885), 87 Mo. 359; *Turley*
v. *Edwards* (1885), 18 Mo. App. 676; *Wright* v. *Stewart*
(1904), 130 Fed. 905; *Hinsdill* v. *White* (1861), 34 Vt. 558;
*Donnelly* v. *Rees* (1903), 141 Cal. 56, 74 Pac. 433; *Boyd* v.
*De La Montagnie* (1878), 73 N. Y. 498, 29 Am. Rep. 197;
*Herrick* v. *Lynch* (1894), 150 Ill. 283, 37 N. E. 221; *An-
derson's Admr.* v. *Merideth* (1885), 82 Ky. 564; *Melbye* v.
*Melbye* (1896), 15 Wash. 648, 47 Pac. 16; *Porter* v. *Jones
supra; Hobbs* v. *Boatright* (1906), 195 Mo. 693, 93 S. W.
934, 113 Am. St. 709, 5 L. R. A. (N. S.) 906; *Johnson* v.
*Cooper* (1831), 2 Yerg. (Tenn.) *524, 24 Am. Dec. 502;
*Harper* v. *Harper* (1887), 85 Ky. 160, 3 S. W. 5, 7 Am. St.
583; 9 Cyc. 551, and cases cited. We believe that

1. the averments of appellee's complaint disclose such
a situation and hold that the demurrers to each para-
graph were properly overruled.

Our attention is called to the case of *Swain* v. *Bussell*
(1858), 10 Ind. 438, as decisive of this case but we do not so
construe it. The plaintiff, Swain, alleged in his complaint
that he deeded his property to the defendant in considera-
tion of 1,533 shares in the "Shelbyville Real Estate Com-
pany"; that the scheme of said company was to distribute
its lands among the shareholders by lot; that the defendant
represented to plaintiff that such scheme was not a lottery
but an honest transaction. The trial court sustained a de-
murrer to the complaint and, on appeal, its action was af-
firmed, this court holding, in effect, that the particular de-
scription of the "Real Estate Company" and its purposes
showed clearly that the scheme was a lottery and negatived

the plaintiff's general allegation of fraud; that Swain was himself a party to the fraud in the case and not merely a victim of it.

The next assignment of error challenges the action of the lower court in granting to appellee a new trial as of right, the first trial of the cause having resulted in a finding and judgment in favor of appellants. Prior to the act of 1913 (Acts 1913 p. 673, §1110 Burns 1914), there were three classes of cases in which a new trial as of right might be demanded under §1110 Burns 1908, §1064 R. S. 1881: (1) in a suit to recover possession of real estate; (2) in an action to quiet title to real estate, and (3) in a partition proceeding wherein the title to the property was in question. It had been held, however, that where two or more substantive causes of action proceeded to judgment in the same cause, one entitling the losing party to a new trial as of right and the other not, the statute would not apply and a motion for a new trial without cause should be denied. *Bennett* v. *Closson* (1894), 138 Ind. 542; *Wilson* v. *Brookshire* (1890), 126 Ind. 497, 9 L. R. A. 792. Appellants take the position that appellee's complaint does not proceed on the theory of an action to recover possession, or to quiet title or to have land partitioned and the title determined. In fact, it is urged that the essential thing sought by the complaint and made the basic and primal cause of action, was the rescission and avoidance of the written contract entered into by appellee and appellant Griffith. In this connection, we are not unmindful of those cases which hold that in actions brought merely to enforce or cancel a lien on realty or a contract in relation thereto, no new trial as of right was permitted by the statute. *Studabaker* v. *Alexander* (1913), 179 Ind. 189, 100 N. E. 10, and cases there cited.

But in this case, however, although the transaction between appellee and Griffith, and the contract itself, are set out in detail for the purpose of showing the deception

which, it is alleged, was practiced on appellee, yet none of the parties sought to establish any rights under the contract or asked to be relieved from performing any of its covenants. The whole theory of the pleading is that of a suit to annul a deed which was obtained by fraud and to reinvest and quiet title in the grantor. In such an action the losing party was entitled to a new trial as of right. *Tomlinson* v. *Tomlinson* (1904), 162 Ind. 530, 534; *Warburton* v. *Crouch* (1886), 108 Ind. 83; *Physio-Medical College* v. *Wilkinson* (1883), 89 Ind. 23. The reasoning used in *Krise* v. *Wilson* (1903), 31 Ind. App. 590, 592, is applicable here. The court there said: ''The first paragraph of complaint is a proceeding in equity to have the conveyances canceled because of the unsoundness of mind of the grantor. * * * The second paragraph is also a proceeding in equity to have the deeds canceled and declared ineffective because not delivered. But in each paragraph the title to the land, which is particularly described, is directly in issue. The only question the court was authorized to try, under the facts pleaded, was the title to the land. If the facts averred were found to be true, the appellees are not the owners of the land by virtue of the deeds, but under the averments the title is in both appellants and appellees as heirs at law of the grantor. The deeds carried the legal title to the appellees, and manifestly the disposition of these deeds will determine where the title should finally rest. If the deeds stand, the title is in appellees. If they are declared ineffective, the title is in appellants and appellees as heirs at law of the grantor.''

The facts pleaded in the case at bar are sufficient to show the existence in each party to the controversy of a claim adverse to that of the other side and there can be no doubt that the ultimate issue was that of title. That this was the construction placed on the complaint by the trial court is clearly manifest in its conclusions of law stated on the facts as found specially and in its judgment rendered on such

conclusions. No reference is there made to the contract or to the respective rights of the parties to it, but the judgment was that the title to the real estate in controversy should be quieted in appellant Gilchrist, that appellee had no right, title or interest in said real estate, and that Gilchrist should recover from appellee certain incidental relief due from the latter as tenant.

Even if it is conceded, for the purposes of argument, that the complaint is fairly open to a different construction, an appellate tribunal is disposed to adhere to that construction, if reasonable, which has been adopted by the trial court. The case of *Comegys* v. *Emerick* (1893), 134 Ind. 148, 39 Am. Rep. 245, presented a situation somewhat similar to the present case and this court there followed the rule above stated. In *Muncie Pulp Co.* v. *Martin* (1904), 164 Ind. 30, 32, this language was used: "When the trial court has placed a reasonable construction upon a pleading' which is open to two interpretations, and has proceeded to a determination of the cause upon such an understanding of its scope, this court will not be forward to adopt a different construction and reverse the case."

8.

Before this cause was tried, however, appellant Gilchrist filed a cross-complaint against appellee, of which one paragraph sought to quiet the cross-complainant's title to the land in controversy and the other was an ordinary suit for possession and damages brought by a landlord against a tenant wrongfully holding over. Appellants contend that as to the latter cause of action no new trial as of right was allowable and that this fact is sufficient to bring the case within the rule expressed in *Bennett* v. *Closson, supra,* and *Wilson* v. *Brookshire, supra.* We cannot so hold. While it is true, to quote from *Chandler* v. *Citizens Nat. Bank* (1898), 149 Ind. 601, 605, that "As a general practice, the original complaint and cross-complaint are heard together, and a judgment is rendered embodying all the points adjudicated, and all the relief awarded under

9.

both complaints", yet it is also true that the cross-complainant and cross-defendant are in legal effect the plaintiff and defendant in a separate action wherein the issues are formed independently of those in the original suit and the dismissal of one action does not affect the other. *State, ex rel.* v. *Wimer* (1906), 166 Ind. 530, 536; *State* v. *Hindman* (1903), 159 Ind. 586, 592; *Judd* v. *Gray* (1901), 156 Ind. 278, 285; *Chandler* v. *Citizens Nat. Bank, supra,* 605; *Moore-Mansfield, etc., Co.* v. *Marion, etc., Traction Co.* (1913), 52 Ind. App. 548. Where the only purpose of an action was to quiet title to real estate, the right of the losing party to a new trial without cause was not abridged by the form which the issues took and was not barred by a cross-complaint setting up a cause of action as to which no such right existed. *Moor* v. *Seaton* (1869), 31 Ind. 11; *Hammann* v. *Mink* (1885), 99 Ind. 279, 282; *Bisel* v. *Tucker* (1889), 121 Ind. 249, 252; 29 Cyc. 1037. Furthermore, in the case at bar the ultimate issue under both the complaint and the cross-complaint was that of title. The original action and one paragraph of the cross-complaint presented no other question, while the relief sought by the other paragraph of cross-complaint, under the averments of that pleading, depended on the cross-complainant's success in quieting his title to the real estate in controversy. For the reasons above stated, we hold that appellee's motion for a new trial as of right was properly sustained.

Finally, it is claimed that the evidence does not sustain the finding that appellant Gilchrist had any knowledge of the fraud perpetrated on appellee by Griffith or that he 10. participated therein in any way. There is no contention that he had any active part in the negotiations between Griffith and appellee but there is evidence which tends to show that at and before the time of the Griffith-Hatch transaction Gilchrist knew of the condition of the Mount Pleasant Oil Company and its property; that he had been pressing Griffith for money which the latter owed him

and had threatened to file a lien against the property of the oil company but refrained from so doing on advice from Griffith; that he was instrumental in preventing a suit against the oil company at a time when such action would have been disastrous for that concern; that Griffith and he were often together; that he knew Griffith had sold some of the oil company stock and was endeavoring to dispose of more of it to obtain money with which to pay him, Gilchrist; that he knew said stock was of little value. There is also some evidence that Gilchrist knew Hatch was to become interested in the oil company and it is clear that he gave no consideration for the property in question except a credit in favor of Griffith on the amount owed by the latter.

From these and other circumstances which it is not necessary to enumerate here, the trial court drew the inference that Gilchrist had such knowledge of the transaction between Griffith and Hatch as will now prevent him from assuming the role of innocent purchaser. It is not the province of this court to weigh the evidence as it appears in the transcript but only to determine whether there is any evidence from which the trial court might properly draw its conclusion. We think the circumstances of this case present a situation in which the following language from the opinion in *Elliott* v. *Baker* (1907), 194 Mass..518, 520, 80 N. E. 450, is applicable: ''This is peculiarly a case for the application of the rule that the justice who hears the witnesses has opportunities for testing their reliability and veracity which no appellate tribunal can acquire. It is stated in the memorandum of the justice that he 'cannot believe, though it is denied by all of them, that there was not some secret understanding or arrangement between Lamson, Foster and Nickerson in regard to the situation.' This finding must have been based not alone upon what was said, but upon a scrutiny of the witnesses, inferences drawn from their appearance, and the atmosphere they created in testifying, which cannot be reproduced in a printed report.''

The record contains no reversible error, and the judgment of the trial court is therefore affirmed.

Cox, C. J., and MORRIS, J., dissent.

## CONCURRING OPINION.

MYERS, J.—Concurring in the opinion by Mr. Justice Spencer, I am constrained to suggest additional legal grounds for affirmance, which impress me.

Conceding for the purpose of argument, that the contract in question, if it were free from fraud or misrepresentation in its inducement, might be prohibited on grounds of public policy, it would be so because of a public interest, but the public as such can have no interest in the inducement itself. That pertains to the parties alone, and if the contract is procured by fraud or misrepresentation as to the thing itself, which is the inducement to the contract, such as misrepresentation of the value, or fraud which forms the main consideration for it, then it appears to me that that portion of the contract is so far severable from the remainder, where the whole contract is not one involving a course of conduct or action, in itself violative of some public policy, that the individual should not be punished because he has been overreached by false representation or fraud, because if that be true, then such rule would put a premium upon such conduct, and lead to greater abuses, than to arrest it where the injured party would have stopped, had he not been led into it by the fraud, which is a separable incident of the transaction, from the portion which is prohibited on grounds of public policy.

As an incident of this view, so long as the prohibited portion of the contract is unexecuted, or the illegal part put in operation, so as to put both parties *in pari delicto*, as to the unlawful thing, there ought, in my judgment to be, and the law recognizes, *not the right to enforce the contract, but the right of the party who has been defrauded* into its execution, to *avoid* it, a very different thing from a contract

not induced by fraud or false representations. It is not claimed that any part of the illegal portion of the contract was performed, or its performance undertaken. The cases relied on by appellant are cases seeking *enforcement* of, and not *relief* from such contracts, presenting a very different proposition. The rule is announced in many cases. It is stated thus, in 9 Cyc. 551: ''Where the parties to a contract against public policy or otherwise illegal are not *in pari delicto,* or equally guilty, which they may not be, and where public policy is considered as advanced by allowing either, or at least the more excusable of the two, to sue for relief against the transaction, relief is given to him. The cases of this character are generally where the party asking to be relieved from the effect of an illegal agreement, was induced to enter into the same by means of fraud. Here he is not regarded as being *in pari delicto* with the other party, and the court may relieve him.'' This rule is sustained by, *Meridian Life, etc., Co.* v. *Eaton* (1908), 41 Ind. App. 118, 81 N. E. 667, 82 N. E. 480; *McDonald v. Smith* (1905), 139 Mich. 211, 102 N. W. 668; *Donnelly* v. *Rees* (1903), 141 Cal. 56, 74 Pac. 433, and cases cited; *Colby* v. *Title Ins., etc., Co.* (1911), 160 Cal. 632, 117 Pac. 913, 916, 918, 35 L. R. A. (N. S.) 813, Ann. Cas. 1913 A 515, and cases cited; *Vitoreno* v. *Corea* (1891), 92 Cal. 69, 28 Pac. 95; *McColgan* v. *Muirland* (1905), 2 Cal. App. 6, 82 Pac. 1113, 1115, and cases cited; *Mobile, etc., R. Co.* v. *Dismukes* (1891), 94 Ala. 131, 10 South. 289, 17 L. R. A. 113, and note; *Pfeuffer* v. *Maltby* (1881), 54 Tex. 454, 38 Am. Rep. 631, and cases cited; *Crescent Ins. Co.* v. *Bear* (1887), 23 Fla. 50, 1 South. 318, 11 Am. St. 331; *Harper* v. *Harper* (1887), 85 Ky. 160, 3 S. W. 5, 7 Am. St. 583, 587, 588, note; *Manchester, etc., R. Co.* v. *Concord R. Co.* (1889), 66 N. H. 100, 20 Atl. 383, 49 Am. Rep. 582, 9 L. R. A. 689, 696, and cases cited; *Duval* v. *Wellman* (1891), 124 N. Y. 156, 26 N. E. 343, and cases cited; *Schermerhorn* v. *Talman* (1856), 14 N. Y. 93, 123-

125, and cases cited; *Webb* v. *Fulchire* (1843), 25 N. C. 485, 40 Am. Dec. 419; *Hobbs* v. *Boatright* (1906), 195 Mo. 693, 93 S. W. 934, 113 Am. St. 709, 5 L. R. A. (N. S.) 906, 912, 915; *Green* v. *Corrigan* (1885), 87 Mo. 359; *Stewart* v. *Wright* (1906), 147 Fed. 321, 329, 334, 77 C. C. A. 499; *Pullman Palace Car Co.* v. *Central Transp. Co.* (1897), 171 U. S. 138, 150, 151, 18 Sup. Ct. 808, 43 L. Ed. 108, 113, 114, and cases cited; *Pullman Palace Car Co.* v. *Central Transp. Co.* (1891), 139 U. S. 62, 11 Sup. Ct. 489, 35 L. Ed. 69; *National Bank, etc., Co.* v. *Petrie* (1903), 189 U. S. 423, 23 Sup. Ct. 512, 47 L. Ed. 879, 881, and cases cited; Bump, Fraudulent Conveyances (4th ed.) §436, and cases cited; *Almy* v. *Orne* (1896), 165 Mass. 126, 42 N. E. 561. In *Hobbs* v. *Boatright, supra*, plaintiff entered into an unlawful enterprise with the defendants, to defraud others, and the defendants obtained his money by fraud. It was held that he was not *in pari delicto*, on account of the fraud, and was allowed to recover for that reason. In *Donnelly* v. *Rees, supra*, a conveyance of land was made by the grantor without consideration, to defraud his creditors. The grantees, however, had procured the conveyance to them by fraud. After the death of the grantor, his heirs brought suit to set aside the conveyance. It was claimed by the defendants that a court of equity will not grant relief to a person who has made a deed to defraud creditors. The court held that the rule had no application in the case, because the deed was procured by the fraud of the defendants, citing a number of authorities. The court said: "The reason of the rule is variously given in the authorities cited; and all the reasons given are good. Commonly it is said merely that the parties are not *in pari delicto*—the offense of the party imposed upon being trivial in comparison with that of the other, who is not only guilty of the fraud common to the two, but of a more heinous fraud, in which he alone participated. Another statement of the rule is, that it is founded on 'the necessity of preventing imposition,' or, as otherwise ex-

pressed, 'of preventing the perpetration of a greater fraud by the grantee' (Bump, Fraudulent Conveyances §436), which is also a weighty consideration. For. otherwise the rule would in effect hold out a reward to designing persons, who would find in its operation a ready means of defrauding others; of which the case at bar furnished an instructive illustration.''

It is said in 9 Cyc. 522, note, ''This rule has been applied, for example, where a person was induced by the fraud of another to make a conveyance of property in pursuance of an agreement which was illegal on the ground of champerty, and sought to get the conveyance set aside in chancery. It was held that as the grantor had been induced to enter into the agreement by the fraud of the grantee, he was entitled to relief. *Reynell* v. *Sprye* [1852], 1 DeG. M. & G. *660, 21 L. J. Ch. 633, 50 Eng. Ch. 510. So where a debtor offered his creditors a composition of five shillings on the pound, and one of the creditors refused to assent unless the debtor would pay him £50 additional in fraud of the other creditors, and the debtor paid him the money and he assented to the composition agreement, it was held that the debtor could recover the money. The parties were regarded as not in equal guilt, because the one had the power to dictate and the other no alternative but to submit. *Atkinson* v. *Denby* [1861], 6 H. & N. 778. So where a husband falsely represented to his wife that she was liable for certain debts, and that the creditors would take her property, and influenced by this, and intending to defraud such creditors, she transferred her property to him, it was held that the deed would be set aside. *Boyd* v. *De la Montagnie* [1878], 73 N. Y. 498, 29 Am. Rep. 197.''

Where one enters into a contract which is contrary to good morals and public policy, and is induced to enter into the contract by the fraud of the other party, such fraud is anterior to, and independent of the contract. The fraud is a tort. As was said by the Supreme Court of the United

States in *National Bank, etc., Co.* v. *Petrie, supra,* ''The right not to be led by fraud to change one's situation is anterior to and independent of the contract. The fraud is a tort. Its usual consequence is that as between the parties the one who is defrauded has a right, if possible, to be restored to his former position. That right is not taken away because the consequence of its exercise will be the undoing of a forbidden deed. That is a consequence to which the law can have no objection, and the fraudulent party, who otherwise might have been allowed to disclaim any different obligation from that with which the other had been content, has lost his right to object because he has brought about the other's consent by wrong.''

There is another rule in regard to a contract against good morals or public policy which is applicable to this case. It is stated as follows in 9 Cyc. 554: ''By the weight of authority, where money has been paid in consideration of an executory contract or purpose which is illegal, the party who has paid it may repudiate the agreement at any time before it is executed, and reclaim the money, for there is a *locus pœnitentiæ.* And on the same principle, goods that have been delivered under an illegal agreement or for an illegal purpose, may be reclaimed, and recovered back, so long as the agreement or purpose remains unexecuted. Where a person has paid money to another upon the illegal consideration of procuring him a public office or stopping a prosecution, he may repudiate the agreement while it remains executory and recover back the money. So where one deposited a sum of money in a bank, to be paid to a sheriff when he should secure the pardon of the owner's brother, who was then in the penitentiary, it was held that he could recover the money so long as it remained in the possession of the bank. The rule seems to be, that it is only where there has been no part performance that the action will lie. * * * But there are rulings to the contrary which enable the party to sue if the agreement is not completely executed.

* * * An agreement will be enforced (and necessarily rescinded), even if it is incidentally or indirectly connected with an illegal transaction, provided it is supported by an independent consideration, or if the plaintiff will not require the aid of the illegal transaction to make out his case." 9 Cyc. 555, notes 78, 81, 89.

The rule is disclosed in the following cases: *DeLeonis* v. *Walsh* (1903), 140 Cal. 175, 73 Pac. 813, 815; *Wasserman* v. *Sloss* (1897), 117 Cal. 425, 49 Pac. 566, 38 L. R. A. 176, 59 Am. St. 209, and cases cited; *Ware* v. *Spinney* (1907), 76 Kan. 289, 298, 91 Pac. 787, 13 L. R. A. (N. S.) 267, 13 Ann. Cas. 1181, and authorities cited; *Hardy* v. *Jones* (1901), 63 Kan. 8, 64 Pac. 969, 88 Am. St. 223, and note 225; *Kiewert* v. *Rindskopf* (1879), 46 Wis. 481, 1 N. W. 163, 32 Am. St. 731; *Souhegan Nat. Bank* v. *Wallace* (1881), 61 N. H. 24; *Sampson* v. *Shaw* (1869), 101 Mass. 145, 3 Am. Rep. 327; *Mueller* v. *Stoecker Cigar Co.* (1911), 89 Neb. 438, 131 N. W. 923, 34 L. R. A. (N. S.) 573; *Leadbetter* v. *Hawley* (1911), 59 Or. 422, 505, 506, 117 Pac. 289; *McCall* v. *Whaley* (1908), 52 Tex. Civ. App. 646, 115 S. W. 658, and cases cited; *Congress, etc., Spring Co.* v. *Knowlton* (1880), 103 U. S. 49, 26 L. Ed. 347. In *Leadbetter* v. *Hawley, supra,* the plaintiff being a stockholder in the Crown-Columbia Pulp and Paper Company, and the owner of $50,000 of its bonds, delivered them to the defendant, who claimed to be also a stockholder in that company, on the agreement that the defendant should retain the ownership of his stock, and vote the same as directed by the plaintiff, or would allow the plaintiff to vote it at all the stockholders' meetings of the corporation for the protection of the interest and holding of plaintiff in the corporation, to all of which the defendant agreed, but that afterwards the plaintiff discovered that the defendant did not own any stock in the company, and by reason of his misrepresentations on this subject, had deceived and defrauded the plaintiff. The court on page 424 said, "A contract becomes executed when all is done that

its terms require to be performed.  Until that situation is attained, the contract is executory.''  On petition for rehearing, the court on page 426 said:  ''As we understand the defendant's petition for a rehearing of this action, he complains that the effect of our decision reversing the judgment of the circuit court is to allow the plaintiff to allege the fraud of the defendant as a cause of action and to recover on proof of the illegality of the transaction narrated in the complaint and testimony.  He insists also in substance that, if the plaintiff would recover his bonds because of the vice of the agreement by which he was induced to part with them, he must in so many words confess its unlawfulness and ask to be relieved from its burden.  3.  As to the fraud, it is alleged as the inducement which led the plaintiff to make the contract, whether legal or not.  No one seeks to recover damages for fraud, but rather for its hurtful effect. It is a mere incident of the transaction in question.  Indeed, for the purpose of recovering property with which the plaintiff may have parted under an agreement, void as against public policy, but which is yet executory, it matters not whether he entered into the arrangement by reason of the fraud of the other party or of his own free will and accord. Although *in pari delicto*, as held in *Cone* v. *Russel* [1891], 48 N. J. Eq. 208 [21 Atl. 847], the recanting party may be restored to his own, if the place of repentance has not been passed, by the complete execution of the illegal contract. Much more is he entitled to relief if he has been deceived by the other party and drawn into an offense against public policy.  4.  Again, it is not necessary as a matter of pleading that the plaintiff should come into a court of law, prefacing his complaint with a *peccavi*, and a general confession of his faults in the matter in hand, for those are legal conclusions.  He has stated all the facts from his standpoint, including the guile of the defendant leading the plaintiff into the situation from which he asks the court to extricate him.  On any pleading the party making it is entitled to the

benefit of any legal conclusion which may be properly drawn from the facts stated. So in this case, if it can be discerned as a matter of law, that the agreement in pursuance of which the plainitff parted with his bonds was contrary to public policy and hence void, he may rely on the further conclusion that he is entitled to recover the property, provided the unlawful convention is still in the executory stage. The legal effect of the complaint is that the moving party is proceeding in disaffirmance of the iniquitous agreement in question. That it is yet executory arises from the fact that the delivery of the bonds by the plaintiff is the only act of performance by either party. None of the things to be done by the defendant has yet been performed. While this condition exists, the plaintiff may retrace his steps, and by appropriate litigation recover his property; for, if the agreement was void as against public policy, it would not operate to pass the title to one who is a party to the illegal transaction. In *Congress, etc., Spring Co.* v. *Knowlton, supra,* the trustees of a corporation devised a scheme to increase its capital stock, whereby on payment of 80 per cent of the par value of the new stock, as called for by the trustees, subscribers to the same should receive fully paid certificates, but in default of meeting all the calls a delinquent should forfeit what he had already paid. Knowlton, a party to this arrangement, paid part of the 80 per cent and failed to pay the remainder. The corporation refused to issue to him the new stock or to repay the money he had advanced. The court sustained him in recovering his payments, on the ground that, although the scheme was void as against public policy, and he was a party to it, yet, as it was still part executory, he was entitled to his money. In *Cone* v. *Russel* [1891], 48 N. J. Eq. 208 [21 Atl. 847], the complainants had executed a proxy, irrevocable in its terms, empowering the defendants to vote certain shares of stock owned by complainants, so as to accomplish certain results in the management of the corporation issuing the stock—among others, the employment

of one of the complainants as manager of the concern at a large salary. The vice chancellor held that, although the complainants were *in pari delicto*, they were entitled to relief against the illegal agreement, to have the proxy cancelled, and to be restored to their former situation. To the same effect is *Sheppard* v. *Rockingham Power Co.* [1909], 150 N. C. 776, 64 S. E. 894. Many other cases might be cited, but the controlling principle in them all is that, until an agreement void as against public policy is fully executed, either party may retreat, and by appropriate proceedings the court will restore him as far as possible to his previous state.''

In *Souhegan Nat. Bank* v. *Wallace, supra,* it was held that an agent who has money furnished him for the purpose of secretly securing the return of stolen securities, is liable for the balance of such money remaining unexpended in his hands. In this case the court said: ''And adopting even the defendant's theory, that the money was knowingly advanced by the plaintiffs for an illegal purpose, he can not be permitted to retain the benefit which, in his representative capacity he seeks to derive from the wrongful act of his intestate; for it is consonant to the letter as well as to the spirit of the law, that, as such alleged purpose was not fully executed, there was a *locus paenitentiae* as to the unexpended balance of the money of which the plaintiffs might legally and properly avail themselves.''

In *Ware* v. *Spinney, supra,* the court said: ''The illegality that defeats a recovery of the money is not in the intent alone. It has been well said: 'persons may not be punished either in civil or criminal courts for unlawful intentions. It is the consummation of these unlawful intentions that places a party without the law. If the unlawful intention or transaction is not carried out, if nothing is done under it, my servant has my property, and I am entitled to its return. As in the present case, he is acting under a special agency which I have a right to revoke at any time before perform-

ance, and, when so revoked, I am entitled to my own. It cannot be better public policy to deny me a recovery of the stock than to encourage my agent to commit a criminal offense.' (*Wasserman* v. *Sloss* [1897], 117 Cal. 425, 59 Am. St. 209, 49 Pac. 566, 38 L. R. A. 176.) Until the contemplated action is executed—the money converted to the illegal use—the parties are given an opportunity to repent and riscind, and the doctrine of *locus paenitentiae*, as it is called, is applied. 'Seeing the error of his ways, the law says a party may withdraw from the transaction; and it extends to him a helping hand by offering the inducement of giving back to him anything of value with which he has parted.' (*Wasserman* v. *Sloss, supra.*) The same view was well expressed by the supreme court of Maine where it was said: 'The law encourages a repudiation of the illegal contract, even by a guilty participator, as long as it remains an executory contract or the illegal purpose has not been put in operation. * * * "It best comports with public policy to arrest the illegal transaction before it is consummated."' (*Tyler* v. *Carlisle* [1887], 79 Me. 210, 212, 213, 9 Atl. 356, 1 Am. St. 301.) In *Morgan* v. *Groff* [1848], 4 Barb. 524, it was said: 'As long as money deposited with an agent for an illegal purpose remains unemployed, or if the purpose be countermanded by the principal before its application, it is a debt which may be recovered from the agent by the principal, either at law or in equity.' "

In *Mueller* v. *Stoecker Cigar Co., supra*, 442, the court said: "It seems to be the general holding of the courts that, so long as an illegal contract remains executory and the illegal purpose has not been put into operation, the one who has paid money thereon to the other party may repudiate the contract and recover back the money. *Stover* v. *Flower* [1903], 120 Iowa 514 [94 N. W. 1100], and cases cited; *McCall* v. *Whaley* [1908], 52 Tex. Civ. App. 646, 115 S. W. 658."

In *Aughey* v. *Windrem* (1908), 137 Iowa 315, 321, 114 N.

W. 1047, the court said: ''One of the defenses interposed was that plaintiff was *in pari delicto*, and for this reason was not entitled to relief. If it be conceded that she was knowingly and voluntarily participating in an unlawful enterprise she had the right to repent of her wrong at any time before consummation in whole or in part of the illegal agreement, and sue for the return of what she had advanced in aid of its execution. *Barnett* v. *Mendenhall* [1875], 42 Iowa 296; *Munns* v. *Donovan Com. Co.* [1902], 117 Iowa 516 [91 N. W. 789]; *Stover* v. *Flower,* 120 Iowa 514 [94 N. W. 1100].

There are many other cases. The case of *Taylor* v. *Bowers* [1876], L. R. 1 Q. B. 291, was an action to recover the value of property assigned for the purpose of defrauding creditors. A verdict was rendered for plaintiff with leave to move to enter a verdict for the defendant. A rule was obtained on the ground that the plaintiff could not by the allegations of his own fraud get back the goods from the defendant. The Queens Bench sustained the verdict, the Chief Justice, Cockburn, delivering the opinion. The defendants then appealed to the court of appeals, where the judgment was affirmed. Both courts agreed that an illegal contract partially performed might be repudiated and the money paid upon it recovered. Lord Justice Mellish, in the court of appeals, said: ''if the illegal transaction had been carried out, the plaintiff himself in my judgment, could not have recovered the goods. But the illegal transaction was not carried out; it came wholly to an end. To hold that the plaintiff is enabled to recover does not carry out the illegal transaction, but the effect is to put everybody in the same situation as they were before the illegal transaction was determined upon, and before the parties took any steps to carry it out. That, I apprehend, is the true distinction in point of law. If money is paid or goods delivered for an illegal purpose, the person who had so paid the money or delivered the goods may recover them back before the

illegal purpose is carried out; but if he waits till the illegal purpose is carried out, or if he seeks to enforce the illegal transaction, in neither case can he maintain an action; the law will not allow that to be done." The same rule substantially is laid down in the following English cases: *Lowery* v. *Bourdieu* (1780), 2 Doug. 468; *Tappenden* v. *Randall* (1801), 2 Bos. & P. 467; *Hastelow* v. *Jackson* (1828), 8 B. & C. 221; *Bone* v. *Ekless* (1860), 5 H. & N. *925; *Lacaussade* v. *White* (1798), 7 T. R. 531; *Cotton* v. *Thurland* (1793), 5 T. R. 405; *Smith* v. *Bickmore* (1812), 4 Taunt. 474; *Munt* v. *Stokes* (1792), 4 T. R. 561.

In *Morgan* v. *Groff* (1848), 4 Barb. 524, it is held that money paid on an illegal contract, which remains executory, can be recovered back in an action founded on a disaffirmance, and on the ground that it is void. To the same effect are: *Utica Ins. Co.* v. *Kip* (1827), 8 Cow. 20; *Merritt* v. *Millard* (1868), 4 Keyes 208; *White* v. *Franklin Bank* (1839), 39 Mass. 181; *Lowell* v. *Boston, etc., R. Co.* (1839), 40 Mass. 24, 34 Am. Dec. 33.

In *Thomas* v. *Richmond* (1870), 12 Wall. 349, 20 L. Ed. 453, the court cites with approval the note of Mr. Frere to the case of *Smith* v. *Bromley* (1781), 2 Doug. 696, to the effect that a recovery can be had, as for money had and received, when the illegality consists in the contract itself, and the contract is not executed; in such case, there is a *locus paenitentiae*, the *delictum* is incomplete, the contract may be rescinded by either party.

Mr. Parsons, in his work, 2 Parsons, Contracts 746, says: "All contracts which provide that anything shall be done which is distinctly prohibited by law, or morality, or public policy, are void, so he who advances money in consideration of a promise or undertakes to do such a thing may, at any time before it is done, rescind the contract, and prevent the thing from being done, and recover back his money." To the same effect, see, 3 Addison, Contracts (Am. ed.) §1412;

Chitty, Contracts (11th Am. ed.) 944; 1 Story, Contracts (5th ed.) §617; 2 Greenleaf, Evidence (Lewis's ed.) §111.

It may be conceded that our own cases have gone very far in refusing aid to one who has been a party to an illegal contract, where it has been even partly executed. As suggested above, appellee is not shown to have done anything with respect to the illegal portion of the contract. It is in fact alleged that no part of it had been carried out. In one sense the contract is an entire one, as embracing both a legal and an illegal consideration, but as indicated by the decisions, they may be disassociated where the parties are not equally guilty of wrong. Such cases as *Overshiner* v. *Wisehart* (1897), 59 Ind. 135, and *Hutchins* v. *Weldin* (1888), 114 Ind. 80, 15 N. E. 804, do not reach the question here, because in the former, the party seeking relief had been an active participant in an undertaking wholly fraudulent, and in the Hutchins case the court plants the decision on the ground that the plaintiff got all that he bargained for. So in *Swain* v. *Bussell* (1858), 10 Ind. 438, Swain got exactly what he bargained for, and was bound to know that the whole transaction was prohibited. In *Board, etc.* v. *Garrigus* (1905), 164 Ind. 589, 73 N. E. 82, 74 N. E. 249, it is pointed out that there is a distinction between cases where both parties are equally guilty of wrong, and where one has been overreached by another into the making of the contract, and also between actions to *enforce*, and those to *rescind*. In our own court, such cases are: *Spaulding* v. *Nathan* (1898), 21 Ind. App. 122, 51 N. E. 742; *American Mut. Life Ins. Co.* v. *Mead* (1906), 39 Ind. App. 215, 79 N. E. 526. The strongest case perhaps in this State, presenting the question of partial execution is *Chicago, etc., R. Co.* v. *Southern Ind. R. Co.* (1906), 38 Ind. App. 234, 70 N. E. 843, but it will be observed that the action was to enforce, and not rescind, and in that case as in the Mead case, the doctrine of *Kain* v. *Bare* (1892), 4 Ind. App. 440, 31 N. E. 205, and *Regensburg* v. *Notestine* (1891), 2 Ind. App. 97,

27 N. E. 108, is declared that if the contract is induced by fraud, it may be rescinded.

The evidence discloses that appellant took a conveyance for property worth $10,000 or more, without any examination of it, from which the inference of his relation to the transaction in its entirety, may be readily drawn. He knew of the existence of the oil stock, and had full knowledge that it was practically of no value, and that having assented to the property being incorporated, he knew that there was nothing to do but take what he could get, without any questions asked, or inquiry made, as his evidence practically discloses. It also appears that appellee received $250 a month for two months, and it is alleged he rendered full value for it. Conceding that this salary was received under the contract, if the services rendered were of that value as services, and there is no intimation to the contrary, and it also appears that he was never secretary or director, no estoppel can be predicated on that fact, for no one can be estopped by receiving what he is entitled to, or as in this case, the fair value of services rendered, in addition to the fact that it will be presumed to be a fair value. *Drury* v. *Hayden* (1884), 111 U. S. 223, 4 Sup. Ct. 405, 28 L. Ed. 408; *Elliott* v. *Sackett* (1883), 108 U. S. 132, 2 Sup. Ct. 375, 27 L. Ed. 678; *Smith* v. *Kidd* (1877), 68 N. Y. 130, 23 Am. Rep. 157.

I am impelled by these additional reasons to concurrence in affirmance of the judgment.

NOTE.—Reported in 106 N. E. 694, 699. As to actions on illegal contracts, see 8 Am. Dec. 691. See, also, under (1, 4) 9 Cyc. 550; (3) 31 Cyc. 333; (5) 9 Cyc. 551; (6) 29 Cyc. 1037; (7) 29 Cyc. 1035; (8) 3 C. J. 725; 2 Cyc. 672; (10) 3 Cyc. 360.