MEYERS ET AL. *v.* HENDERSON, ADMINISTRATOR.
[No. 25,116.   Filed June 30, 1932.   Rehearing denied December 7, 1932.]

*Walter G. Todd, Owen S. Boling, Edward E. Eiken-bary, Arthur L. Gilliom* and *Pickens, Davidson, Gause, Gilliom & Pickens,* for appellants.

*Charles E. Henderson, Laurens L. Henderson, Robert M. Porter* and *Silas C. Kivett,* for appellee.

TRAVIS, J.—This is an action of tort in respect to a breach of duty arising out of an alleged contract or alleged contracts. This cause of action was instituted by Guy B. McLemore, and from a judgment in his favor, the appellants brought this appeal. When this appeal was pending, a petition was presented to this court which prayed that Laurens L. Henderson, administrator of the estate of Guy B. McLemore, deceased, be substituted as appellee in the above cause, for the reason that the original plaintiff below and the original appellee on appeal died intestate in Nashville, Tennessee, in September, 1929, and that Laurens L. Henderson was appointed administrator of the estate of the decedent, Guy B. McLemore, by the Marion Probate Court, in Marion County, Indiana, November 14, 1929, which petition was granted and substitution ordered as prayed December 3, 1929.

The question presented for decision, the answer to which decides this case on appeal, is the alleged error of the trial court in overruling appellants' separate and several demurrer to appellee's decedent's second amended complaint, because it does not state facts sufficient to constitute a cause of action against either of them.

Hereinafter, in this opinion, the party designated as the appellee, refers to the substituted appellee's decedent, Guy B. McLemore.

The complaint alleges that appellee, the plaintiff, was engaged in the real estate business in the state of Mississippi and other states, and that he was a non-resident of the state of Indiana. Prior to August 16, 1921, Corinne Smith McLemore and C. R. Smith were the owners of record of the fee simple title of a plantation in Washington County, in Mississippi, known as Napannee plantation. This plantation consisted of 2,500 acres and certain personal property thereon, which was used in connection therewith, and which consisted of farming implements, live stock, a commissary and growing crops. Napannee plantation, and the personal property designated, were mortgaged to secure an existing debt which aggregated $336,663.56. At the same time, prior to August 16, 1921, Thomas P. Reynolds was the owner of record of the fee simple title of a plantation in Tensas Parish, Louisiana, known as Somerset plantation, which consisted of 14,750 acres and certain personal property thereon, used in connection therewith, which consisted of farming implements, live stock, a commissary and growing crops, on which plantation and personal property were certain encumbrances and liens which amounted to $343,500.00.

The owners of the Napannee plantation, by their written contract with the appellee, placed in his hands all of their property named, to either buy, or sell, or trade for other real estate, which he, appellee, might find to

be desirable property. The owners of the property fixed the value at the encumbrance thereon, and, by the terms of their written contract with appellee, they were to be relieved and discharged of all personal obligations in the sum of the mortgages stated. Likewise, Reynolds, by his written contract with appellee, placed his property, known as Somerset plantation, with the personal property, with appellee to either himself purchase, or to sell, or trade the same for other real estate, which, he, the appellee, might find to be desirable property. Appellee was to take Reynolds' property subject to a lien of $285,000.00, and further, by said written agreement, agreed to pay the sum of $58,500.00 encumbrance on the property, and, also, $12,000.00 of other indebtedness which was owed by Reynolds; and further, that the appellee was to give his notes for the sum of $23,000.00 and $11,000.00, secured by instruments of trust upon the lands in favor of Reynolds, and agreed to pay in addition to Reynolds $25,000.00 in cash upon the delivery of the deed for the property. After all the respective record owners of the two plantations, and personal property named, agreed that the appellee might sell, or trade to other persons, and that they, the then owners, would make conveyances to any purchaser or purchasers to whom appellee might sell, or trade, such properties; and pursuant thereto, McLemore and Smith, the owners of the Napannee plantation, made a deed and delivered the same to appellee, and a bill of sale for the personal property, but did not state in either instrument the name of the grantee in the deed and the vendee in the bill of sale, but that such names were to be written into the instruments, after which the deed and bill of sale were to be delivered by appellee to any person with whom appellee "conducted negotiations."

Reynolds, the owner of the Somerset plantation, likewise made a deed for his plantation in due form ac-

cording to the laws of Louisiana, but did not name any person as grantee in the deed, but agreed that the name of such grantee should be placed in the instrument by appellee, and also a bill of sale for his personal property, located on Somerset plantation, which did not name the vendee, but gave authority to appellee to place therein as vendee the name of any person with whom he might make a deal. Reynolds placed the deed and bill of sale in escrow for delivery whenever the $25,-000.00 so agreed to be paid, and the notes were executed, which were named in the contract and such notes were secured by a trust deed on the Somerset plantation. It was further agreed by Reynolds and Smith and Corinne Smith McLemore, that, after they had received the respective amount and respective notes and trust deed from the appellee for the sale, or trade of their properties according to their contracts with appellee, all that appellee received over and above such amounts would be his as, and for, his profit and pay for such services in making such sales or exchanges of the properties named.

Pursuant to the written contracts between the owners of the plantations and appellee, he, the appellee, undertook to sell or exchange these properties for their respective record owners; and, in connection therewith, appellee "engaged the services of defendant (appellant) Meyers," and such negotiations were had pertaining thereto that Meyers called to assist in such transaction as a representative of himself, with the knowledge and consent of the appellee, appellants Johnson and Johnson. Each of the appellants, Meyers, Johnson and Johnson, knew all the details and conditions upon which appellee had these prospective properties for sale or exchange, and knew the details and conditions of such arrangements which had theretofore been made by and between appellee and the respective owners of the prop-

erties by which they, by written agreement, granted to the appellee the right to sell or exchange the properties as hereinbefore stated.

Thereafter, appellee and Meyers had negotiations with one Edward F. Hiatt, by which "a deal was consummated for each of the described properties," and by which Hiatt was to accept conveyances for each of the properties in the form of deeds and bills of sale, and to give in exchange therefor certain properties and cash; and he, also, was to assume and agree to pay all the indebtedness against the properties. All the parties had agreed on the details of such exchange, by the terms of which Reynolds was to receive in cash $25,-000.00 from appellee, and appellee was to assume and agree to pay all of said indebtedness, being a lien on the real estate, and $12,000.00 owing by Reynolds to others, so that Reynolds would receive the entire purchase price above recited received by him from appellee, and likewise, Hiatt was to receive a deed and assume and agree to pay the mortgage indebtedness of $336,663.56 on the Napannee plantation; and, in addition thereto, Hiatt was to loan to McLemore the sum of $100,000.00, secured by a junior lien on the properties known and designated as lots 1, 2, 3 and 8, hereinafter described, and likewise was to properly transfer to appellee the following described real estate, to-wit: (1) a certain property situated in the city of Marion, Grant County, Indiana, known as the Glass Block, subject to a mortgage indebtedness for a total of $95,000.00; (2) a certain property in the city of Anderson, Indiana, known as the Brook Building, subject to a preferred stock issue of $90,000.00; (3) a certain business property in the city of Richmond, Indiana, known as the Wayne Apartment, which was subject to a mortgage of $20,000.00; (4) a certain business property in the city of Richmond, Indiana, situated in the southwest corner of Main and

12th streets, known as the 12th Street Building, which property was clear of any encumbrance; (5) 70 lots in Reeveston Place Addition to the city of Richmond, Indiana, the same clear of mortgage encumbrance; (6) 365 acres of land in Clark County, Indiana, near the town of Memphis, Indiana, clear of mortgage encumbrance; (7) the certain property on West Market Street in the city of Indianapolis, Indiana, known as the Illiana Realty Company, the same clear of mortgage encumbrance; (8) the certain 632 acres of land in Grant County, Indiana, known as the Studebaker Farm, subject to a mortgage thereon of $30,000.00. Appellee intended to pay for Reynolds the sum of $12,000.00, not secured by liens on any of Reynold's properties, and to pay Reynolds the agreed sum of $25,000.00 in cash, and, further, to discharge any and all such obligations by him to be discharged in his contract with Reynolds, and, at all times, was ready, able and willing on his part to carry out the terms with Hiatt for the respective properties; and, that Corinne Smith McLemore and C. R. Smith and Reynolds were ready, able and willing, at all times, to carry out their respective agreements with the appellee. That pending the progress of carrying into completion the details of the agreement for the exchange of properties between the parties, appellant Meyers breached his employment to assist appellee in making such exchange of properties and carrying to completion the agreements between appellee and Hiatt and appellee and the owners of the plantations and personal property; and, thereupon, Meyers, conspiring with appellants Johnson and Johnson, assisted in sending the appellee to Mississippi to work out some of the minor details connected with the transactions; and, while appellee was in Mississippi, appellants wrongfully advised Hiatt that, for a certain consideration to them in cash and the conveyance of

the certain property described above as number 7, they could save him money; and, that they would have Reynolds make conveyance of his plantation and personal property to Hiatt upon the same terms and conditions as contracted by Reynolds with appellee, and as above stated, and thereby could save Hiatt money. Pursuant thereto, Hiatt agreed with appellants, and the appellants then approached Reynolds and falsely advised him that they were representing the appellee in the deal between Reynolds and Hiatt, and that appellee was ready to close the same as other property belonging to Reynolds and leave the remainder thereof to be closed later; and also told Reynolds that Hiatt was ready to fully consummate his part of the transaction; and, Reynolds, believing such facts to be true, did insert the name of the grantee in said deed, and the name of the vendee in said bill of sale, for said real estate and personal property, and thereby made conveyance of the properties to Hiatt, and Hiatt paid Reynolds $25,000.00 in cash as called for by the contract between appellee and Reynolds, and Hiatt made conveyance to one or more, or all, of said appellants of property described as number 7 herein, and paid in addition thereto to them money, the exact amount of which, and the exact terms of which transaction, are unknown to appellee, but are known to the appellants. All of which was done in the latter part of September, 1921, the exact date being unknown to appellee, without the knowledge or consent of appellee.

And the complaint further alleges that Hiatt performed all the terms and conditions of the contract as called for and existing between appellee and Reynolds. All of which transactions were done pursuant to the conspiracy by and between appellants for the purpose of cheating and defrauding appellee out of the money received by appellants from Hiatt and the property de-

scribed as number 7, owned by Hiatt. And it is further alleged that by the terms and conditions of the respective agreements between the respective owners of the property and appellee, appellee "would have made in the deal the sum of approximately $100,000.00," and because of the wrongful and unlawful acts of appellants, he was deprived from making this sum of money as profit. It is further alleged that neither of said contracts mentioned had expired and that all of them were in full force and effect, and that each of the parties thereto were ready, able and willing to carry out the terms and conditions thereof, and would have done so had it not been for the wrongful acts of appellants.

The Napannee plantation was not included in the deal at the time of the transaction between Reynolds and Hiatt, but subsequent thereto, appellee did make a deal with Hiatt, by which there was traded to Hiatt the Napannee plantation, according to the original agreement, and therein the owners of the Napannee plantation received all of the above described properties except numbers 1, 3, 7 and 8, which would have come to appellee as, and for, his profit had not appellants committed the acts heretofore alleged, which deprived appellee of obtaining the last numbered properties, to-wit: lots 1, 3, 7, and 8, as his own. It is also alleged that the last named deal between appellee and Hiatt for the exchange of properties between Hiatt and Corinne Smith McLemore, C. R. Smith and Reynolds, was made because of the fact that the owners of said properties were so situated financially that they were compelled to make such transfer in order to escape a pressing obligation on the Napannee plantation, as before stated.

Last it is alleged by the complaint that; by the terms and conditions of the written contracts between the respective record owners of the plantations and appellee,

it was provided that the appellee might sell or exchange such properties to any person or persons whomsoever and appellee was authorized by such contracts to insert in any instrument of conveyance the name of the person or persons to whom such property was sold or traded.

Appellee's cause of action depends upon the "deal" which he "consummated" with Edward F. Hiatt for the exchange of the two plantations, one in Louisiana and the other in Mississippi, for the several pieces of real estate in Indiana owned by Hiatt. Appellee alleges that he is not a resident of Indiana, which in law is an allegation that he is a "foreign person." (§1, Chap. 249, Acts 1921, p. 733; §9783 Burns 1926.) This brings him within the law that, as such, he may not lawfully, for a compensation or valuable consideration, offer for sale, or negotiate the sale or exchange of real estate within Indiana, either directly or indirectly, without a license therefor. Neither could he lawfully sell or offer for sale within Indiana real estate without the state, until he was duly licensed as legally required (§8, Chap. 249, Acts 1921, p. 735; §9790 Burns 1926) ; and any contracts, sales or arrangements thus made without first complying with the law, by being licensed thereunto so to do, are void. It follows that the allegation, "That pending the time for the final consummation of said exchange of properties between the said plaintiff (appellee) and said Hiatt," meaning the properties in Louisiana and Mississippi and the properties in Indiana which belong to Hiatt, without the allegation of the act of obtaining a license so to do, is void, and the allegation amounts to naught. Appellee could not legally sell or offer for sale any of the properties mentioned in his second amended complaint, by the allegations of the complaint;

and it follows that, as a matter of law, he never did sell or offer for sale, buy or offer to buy, or negotiate the purchase or sale or exchange of any of the properties of real estate mentioned in the complaint.

Appellee makes the point to sustain the action of the court in overruling the demurrer to his second amended complaint, that, since his action is in tort for the fraud of an agent, the validity of the con- tracts has no bearing upon the case, and cites to sustain him the case of *Bragg* v. *Eagan* (1912), 51 Ind. App. 513, 517, 98 N. E. 835. The case cited is readily distinguishable, and does not sustain the point. Appellee has no set-up of alleged facts that appellant Meyers was his agent. The sole allegation of the complaint, which has to do with the relationship between appellee and appellant Meyers, is "that in pursuance to said arrangement (the written contracts with the owners of the plantations by appellee, whereby he might purchase, sell or exchange the plantations) this plaintiff (appellee) did undertake to sell or exchange the said properties (plantations) for said respective record owners, and in connection therewith engaged the services of defendant (appellant) Meyers." This allegation does not set up relationship of principal and agent. For aught the complaint shows, Meyers' duties were to furnish appellee room and board at his home, and use conveyance to take appellee to Hiatt's lodgings, and the privilege to appellee to use Meyers' office to carry on negotiations. It is also alleged, "That the said Meyers and this plaintiff (appellee) conducted negotiations with one Edward F. Hiatt and such negotiations were had that a deal was consummated for each of the above described properties (plantations), and the said Hiatt was to accept conveyances, etc., . . ." No "deal," such as is alleged could be consummated legally by either appellee or appellant Meyers, unless and until they

complied with the law, and, it follows that no deal was made or tendered, or consummated. It would be a monstrous public policy which would be so blind to justice, as to countenance such an act. The alleged contract between appellee and Hiatt, and the contractual relationship between the parties to this action do have a "bearing upon the case," without which contracts and relationship between the parties to carry into execution the contracts of sale or exchange, there is no cause of action pleaded.

Appellee also bases this action upon the fraud of his agent Meyers. The court cannot find that Meyers is the agent of appellee without knowing the terms of the relationship. These are not alleged. We cannot say, as the law of the complaint, that fraud was practiced upon appellee by appellants. To plead actionable fraud, the complaint must plead that the plaintiff has been damaged. Appellee, to sustain his allegations to plead fraud, bases the fraud upon the contracts, and says that the validity of the contracts has no bearing upon the case. The answer to that point is that there is no contract, such as he relies upon to lay the foundation of his case. There being no contract, we do not reach the proposition that the validity of the contract is not to be considered. Fraud has relation to contracts. *Board, etc.*, v. *Garrigus* (1905), 164 Ind. 589, 598, 74 N. E. 249.

Appellee proposes further that "where fraud is the issue, though contract were illegal, party thereto may recover thereon," and cites *Gilchrest* v. *Hatch* (1914), 183 Ind. 371, 106 N. E. 694, 699, to sustain it. An extract from the opinion in the case which bears upon appellee's proposal is, "The weight and trend of modern authority seems to be that, although the parties to a transaction have concurred in an illegal act, whatever it may be, they are regarded as not equally guilty where

one party has been induced into the contract through fraud, oppression or imposition on the part of the other, and under such circumstances equity will intervene whenever the public good requires it." (p. 378.) Appellants did induce appellee to become a party to any contract through fraud. The complaint will be construed against the pleader, not in his favor or to his advantage. So construed, if appellee's contention prevails that appellant Meyers is his agent, the inference prevails that appellee fraudulently induced Meyers to aid him, as his agent, to sell or exchange lands, in violation of law, in that appellee did not disclose to Meyers that he had taken all steps to comply with the law, so that he might legally have Meyers' aid as such agent. If equity be brought into this case, it appears that appellee is not appearing here with clean hands. There is nothing to be gained by extending this opinion.

The essential elements, or ultimate facts necessary to state a cause of action upon tort for the fraud of an agent based upon contracts are not well pleaded. This court finds that the trial court erred by its decision in overruling appellants' demurrer to appellee's second amended complaint, and that the demurrer ought to have been sustained. The cause is remanded, and the trial court is ordered to sustain appellants' demurrer to appellee's second amended complaint, and the judgment is reversed.